## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                            )
UNITED STATES OF AMERICA          )
                                            )          Case No. 04-CR-10298-DPW
                                            )
                                            )
                                            )
MARKO BOSKIC                           )
_____)

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION FOR EXCULPATORY EVIDENCE

The defendant has moved that the Court order the Government to provide the defendant

with:

       1.  The identity, address, and any statements made by the
witnesses identified by the Government as CI1, CI2, and CI3.

       2.  Any and all information confirming or supporting the
fact that defendant was coerced into service in the forces of
Republica Srpska or that he was coerced to participate in the
conduct of those forces in or about 1995.

As will be shown below, information tending to corroborate the fact that defendant was

coerced to participate in the operations of the Republica Srpska in Bosnia in 1995 is central to

his defense, and it is evident from the little the Government has already disclosed about these

witnesses that this is precisely the information they have.  Accordingly, the Government is

required to produce this exculpatory information by both the Due Process Clause of the Fifth

Amendment and the Compulsory Process Clause of the Sixth Amendment.

**Statement of the Case**

**The Charges**

The defendant has been indicted for five counts of making false statements in connection with immigration applications and an investigation. Two counts (One and Three) charge that he made false statements when he applied for classification as a refugee on or about February 17, 2000, in the Federal Republic of Germany, in violation of 18 U.S.C. §1546(a). Two others (Counts Two and Four) charge that he made false statements when he applied for permanent residence, on or about April 5, 2001, in Massachusetts, also in violation of 18 U.S.C. §1546(a). Count Five charges that he made a false statement when interviewed by federal agents in Boston, in violation of 18 U.S.C. §1001.

Counts One, Two and Five all allege that defendant falsely stated that he had "only served in the Yugoslav National Army and no other," when he knew that "he had, in fact, served in the Army of the Republic of Srpska." Counts Three and Four allege that defendant falsely denied that he had ever participated in the "persecution of any person" (Count Three), or the "killing of any person" (Count Four), "because of race, religion, nationality, ethnic origin or political opinion," when he knew that he had, in fact, done so.

**The Context**

The charges against the defendant stem from the bloody ethnic conflict that engulfed the breakdown of the former Yugoslavia between 1992 and 1995, between and among Muslims, Croats (who were Roman Catholic) and Serbs (who were Eastern Orthodox) and was centered in the area now known as Bosnia and Herzogovina. The Bosnian territory – which was predominantly Muslim -  declared independence from Yugoslavia in 1992; in reaction, ethnic

Bosnian Serbs declared their own breakaway Republic of Srpska, and the conflict erupted.

The defendant was extensively questioned by government investigators in a five hour interrogation on August 25, 2004 and then signed a written statement. The following facts are taken from those statements and from certain records of the International Committee of the Red Cross ("ICRC").[1]  The defendant is an ethnic Croat, who was born in Tuzla, a Muslim dominated city in Bosnia. Defendant served in the Yugoslav army in 1983-84. (Exhibit C, pp. 3-4)(Handwritten notes of ICE Agent Thomas Carroll).  He was detained for a month in Tuzla in 1993, and registered by the ICRC in custody. (Exhibit A). His detention was on account of his refusal to serve in the Bosnian militia. (Ex. C, p 5).[2]  When he obtained his release, he headed East, entered the Serbian controlled area, but was arrested and detained by the Serbs in the Batkovic concentration camp – notorious for its appalling conditions. (Exhibit D).[3]  There he was registered by the ICRC a second time.  (Exhibit A).

Defendant told the investigators that he was in the Batkovic camp for about six months and then, in June 1994, he was forced to join the Army of the Republica Srpska, which was presented to him as the only way ever to get out of the Batkovic camp alive. (Ex. B, p. 4). He was told that if he did not join he would be "liquidated." (Id. p. 3). He admitted to the

---

[1] Defendant does not concede that these statements are admissible against him at trial, and is filing a motion to suppress them.

[2]  The notes refer to 1992; the date is actually 1993, as shown in the Red Cross registration (Ex. A).

[3]  See Final report of the United Nations Commission of Experts (May 27, 1994)(Ex. F). The camp was run by paramilitary forces and detained Muslim and Croat civilians. From time to time the UN received reports of the scarcity of food, regular beatings, forced labor, and the absence of medical care. Many prisoners died on account of beatings, lack of medical treatment, and from hunger.

investigators that in the summer of 1995, he was a member of a unit, the "10th Sabotage

Detachment, which was involved in the mass killing of Muslim men which took place in

Srebenica, in the summer of 1995.  He said that he was ordered by his commander to participate

and that, when he tried to refuse, the commander "came up (to me) and put a pistol on (my)

forehead and said that I have to, or I will be dead."  (Ex. D, p. 2).  He said, "I believe it wasn't

even me that did that.  If someone forces me to do something then it is not me that did it."  (Ex.

B, p. 4).  He continued, "I was forced to do what I did.  I never did anything because I wanted to

do it."  (Ex. B, p. 5).

### The Requested Information

In its Automatic Discovery disclosure, the Government has notified the defendant of the

existence of three confidential informants who have information bearing on the defendant's

conduct in Srebenica and on the operations of the "10th Sabotage Detachment:

> CI1: who has information "that the defendant was drinking alcohol
> on the day of the killings at the Branjevo farm."
>
> CI2: who has information "that individual soldiers who refused to
> obey orders where at risk of being shot by their superiors."
>
> CI3: who has information "that soldiers were trained to obey
> orders."

However, the Government refuses to disclose the identity of the witnesses, or their complete

statements, because it contends that the information "does not constitute exculpatory evidence in

this case."  (Exhibit D, p. 4).

**Argument**

**The Government is Obliged to Produce the Requested
Information Under the Due Process Clause of the Fifth
Amendment and the Compulsory Process Clause of the Sixth
Amendment Because It Is Highly Material to the Defense**.

Although the Government has provided only the most elliptical descriptions of the

information possessed by these witnesses, it is virtually certain that each of them – either

because he knew defendant, or was a percipient witnesses to events at Srebenica, or was familiar

with the nature of defendant's unit and the Army of Republica Srpska – would corroborate

defendant's claim, made in his statements, that he participated in the Srebenica killing only

because he was himself threatened with death.  The Government, apparently, contends that the

information is irrelevant because it does not bear on the question of whether or not defendant

actually was a member of the unit or participated in the event.  But, as we set forth below, the

evidence is highly material to the issue of whether <u>defendant</u> believed that his answers to the

questions posed in the applications were true.  Accordingly, he is entitled to have access to these

witnesses, and to full accounts of their information, together with any and all information

confirming or supporting the fact that defendant was coerced into service in the forces of

Republica Srpska or that he was coerced to participate in the conduct of those forces in or about

1995.

**The Elements of the Offenses**

In order to prove that the defendant violated 18 U.S.C. §1546(a), the Government must

prove that the defendant (1) made a statement; (2) under oath, or under penalty of perjury; (3)

with respect to a material fact; (3) in an application required by the immigration laws and

regulations; (4) and that the statement was knowingly; (5) false.  Under 18 U.S.C. §1001, the

government must prove that the defendant (1) made a statement; (2) which was material; (3) within the jurisdiction of the executive, judicial or judicial branch; and was (4) knowingly and wilfully; (5) false.  See United States v. Gaudin, 515 U.S. 506, 509 (1995).

The Government must prove that the statement was both false and that the defendant believed that it was false.  If the statement was literally true, the defendant may not be convicted even if he intended to deceive or mislead.  Bronston v. United States, 409 U.S. 352 (1973)(perjury prosecution); United States v. Moses, 94 F.3d 182, 188-89 (1st Cir. 1996)(false statement prosecution); United States v. Gahagan, 881 F.2d 1380, 1382 (6th Cir. 1989)(false statement); United States v. Martinez, 836 F.2d 684, 689 (1st Cir. 1988)(perjury); United States v. Glantz, 847 F.2d 1, 6 (1st Cir. 1988)(false statement).  The government must show that the falsity was intentional, and not the result of ambiguity of the question, or accident, confusion, misunderstanding or neglect.  United States v. Diogo, 320 F.2d 898, 905-07 (2d Cir.1963); United States v. Manapat, 928 F.2d 1097, 1101 (11th Cir. 1991); United States v. Kehoe, 562 F.2d 65, 69 (1st Cir. 1997).   At the core of the offense is the requirement that the Government prove that the defendant did not actually believe in the truth of the statement:

> [The jury] must determine what the words meant to the defendant
> at the time he offered them as his testimony, and then conclude
> that the defendant did not at that time believe in the truth of such
> testimony according to the meaning he ascribed to the words and
> phrases he used.

United States v. Diogo, supra (perjury prosecution), quoting United States v. Lattimore, 127 F.Supp. 405 (D.D.C. 1955) aff'd by equally divided court, 232 F.2d 334 (D.C.Cir. 1955).  See Bronston v. United States, supra at 359; United States v. Glantz, supra at 9. "In [false statement cases], the government bears the burden to negate any reasonable interpretations of the statement

that would make the defendant's statement factually correct, where reporting requirements are ambiguous." United States v. Migliaccio, 34 F.3d 1517, 1525 (10th Cir. 1994)(and cases cited); United States v. Manapat, supra.   These issues must be resolved in the context in which the statements arise.  United States v. Manapat, supra at 1101; United States v. Martellano, 675 F. 2d 940, 943 (7th Cir. 1982); United States v. Doherty, 87 F.2d 47, 69 (1st Cir. 1989).

### The Nature of the Requested Information

The information sought by the defendant would support the contention that he was coerced into the Bosnian Serb army and into participating in the Srebenica killings.  Specifically, he has requested that the Government provide: (1) the identity and addresses of the witnesses; (2) the statements of the witnesses; and (3) information confirming or supporting the fact that defendant was coerced into service in the forces of Republica Srpska or that he was coerced to participate in the conduct of those forces in or about 1995.   According to the thumbnails provided by the Government, CI1 was a percipient witness to the defendant on the relevant date, in Srebenica, and CI2 and CI3 were familiar with the coercion exercised in defendant's unit. Obviously, the witnesses have told the Government much more than it has shared with the defendant in its terse allusions to their information.  Defendant believes that their full statements will certainly corroborate his claim of coercion.

### The Government's Obligation

The Government's obligations derive from two sources.  First, the Due Process Clause of the Fifth Amendment requires the Government to provide the defendant with evidence favorable to the accused.  Brady v. Maryland 373 U.S. 83 (1963); Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Osorio, 929 F.2d 753 (1st Cir. 1991); Conley v. United States, 332 F.Supp.2d

302 (D. Mass. 2004).  See United States v. Mannarino, 850 F. Supp. 57 (D. Mass. 1994).

The other source of the Government's duty is the Sixth Amendment right to compulsory process.  The Government is obliged to assist the defendant in obtaining the presence of a witness whose identity or whereabouts is known only to it, or to produce the witness if he is in the Government's control, if the defendant makes "some plausible showing of how their testimony would have been both material and favorable to his defense." United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982).   "Some plausible showing" however does not mean defendant must show exactly what the witness would say:

> [W]hile a defendant who has not had an opportunity to interview a witness may face a difficult task in making a showing of materiality, the task is not an impossible one.  In such circumstances it is of course not possible to make any avowal of *how* a witness might testify, and the relevance of those events to the crime charged, may well demonstrate either the presence or absence of the required materiality.

Id. at 871.

## The Government Is Obliged to Produce the Requested Information

The information sought by the defendant must be produced by the Government because, contrary to its contention, it is highly relevant and material to the defense.   The indictment alleges that the defendant  "only served in the Yugoslav National Army and no other," when he "he had, in fact, served in the Army of the Republic of Srpska," and that he falsely denied that he had ever participated in the "persecution of any person," or the "killing of any person," "because of race, religion, nationality, ethnic origin or political opinion," when he had, in fact, done so. (Emphasis added).   At trial in this case, the Government will have to prove that defendant did not actually believe these statements to be true.  But as the above indicates, the defendant told

investigators that he was a civilian who was forcibly impressed into the Bosnian Serb army, as

an alternative to death in the Batkovic concentration camp.  His defense is that he believed that,

as a legal and moral matter, he was not truly a member of that army and that he retained his

essential civilian status in the eyes of the law.[4/]  Similarly, defendant never believed that he

participated in the Srebenica killings "because of race, religion, nationality, ethnic origin or

political opinion."  In his view, "I was forced to do what I did.  I never did anything because I

wanted to do it."  (Ex. B, p. 5).  As he summed up his beliefs to the investigators, "I believe it

wasn't even me that did that.  If someone forces me to do something then it is not me that did it."

(Id. p. 4).[5/]   Accordingly, the evidence will show that in the defendant's mind the fact that he

was coerced into all of the acts alleged by the Government indeed made his statements true.

Thus, it is essential that defendant be able to corroborate his claims of coercion.  Defendant has

therefore made far more than "some plausible showing" of materiality and is entitled to the

information he has requested.

---

[4/] It is noteworthy that "compelling a protected person [i.e. civilian] to serve in the forces of a hostile Power" is considered to be a "grave breach" of the Geneva Convention relative to the Protection of Civilian Persons in Time of War, Article 147.

[5/] Note that defendant was not responding to the allegations of false statements directly. At the time he was interviewed, he was unaware that he would be charged with any crime, and was not confronted with any prior statements.  The circumstances of that interrogation will be set forth in connection with defendant's motion to suppress.

## **Conclusion**

For the reasons set forth above, the Court should allow defendant's Motion for

Exculpatory Evidence.

Respectfully submitted,

/s/ Max D. Stern
Max D. Stern
BBO No. 479560
Lillian Hirales
BBO No. 652698
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800

Dated: March 7, 2005

G:\SSWG\Boskic\exculp memo.wpd

-10-