**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
　　　　　　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA　　　)
　　　　　　　　　　　　　　　　　　　　)　　　No. 04-CR-10298-DPW
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
MARKO BOSKIC　　　　　　　　　　)
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANT MARKO BOSKIC'S**
**MOTION TO SUPPRESS EVIDENCE**

Defendant Marko Boskic has been indicted on five counts of making false statements, in applications for a refuge visa, for permanent resident status, and in an interview with investigators on August 25, 2004. The substance of the charges are that defendant, in the various statements, lied about his involvement in the bloody ethnic conflict that took place in the former Yugoslavia between 1992 and 1995, specifically by denying military service in the ethnic Serbian controlled "Army of the Republic of Srpska" and denying his involvement in a mass killing of Muslim men which took place in Srebenica, Bosnia, in July 1995.

This memorandum is in support of the defendant's motion to suppress: (1) all of the oral statements he made to Government investigators on August 25, 2004; (2) all evidence seized in an ensuing search of defendant's home; and (3) all evidence derivative of that obtained from the statements and search.

## **Statement of Facts**

The facts set forth below are taken from the Affidavit of Marko Boskic in Support of Motion to Suppress Statements, (Exhibit A), except where indicated.[1]

In August 2002, Boskic, a citizen of the Bosnian Republic who is a permanent resident of the United States, applied to the INS for travel documents. Sometime between August 10 and 15, 2004 he received a notice from the INS to pick up the documents on August 25, at 3:00 pm at the JFK Building, and to bring suitable identification.

Unknown to Boskic, earlier on August 25, the Government had applied to a magistrate-judge of this Court for a criminal complaint charging the defendant with violations of 18 U.S.C. §1546(a) in immigration applications he filed on September 3, 1999 and April 5, 2001. The Court issued the Complaint and a warrant for defendant's arrest. (Exhibit D).

Completely unaware that he was the subject of any criminal investigation, much less of a formal charge, Boskic reported to the JFK building at the appointed time to obtain his travel documents. He appeared at the reception desk, displayed his notice, and was asked to wait. In a little while, Special Agent Thomas Carroll, an agent of the Bureau of Immigration and Customs Enforcement ("ICE") appeared. Boskic gave him his identification (his Bosnian passport), and the agent led him toward the back offices.

Agent Carroll took him to a cubicle in an interior office. They were alone, without an interpreter, and Boskic had only a limited command of English. Carroll started to ask Boskic

---

[1] Also attached are the reports of ICE Special Agent Thomas Carroll (Exhibit B) and FBI Special Agent Gregory Hughes (Exhibit C). Except for the precise time at which the <u>Miranda</u> warnings were given, and a waiver obtained, the defendant's account of the circumstances of the statements is in large measure consistent with the reports of the agents.

questions, in English, and Boskic responded, in English.  Carroll did not tell Boskic that he was under criminal investigation or any kind of investigation at all.  Defendant believed that he was being interviewed in connection with his application for travel documents.  Boskic was not advised on his rights at this time and did not sign anything at that time.

Agent Carroll started by asking questions about why Boskic wanted travel documents.  Defendant told him that he wanted to travel to Austria and Germany to visit his relatives.  He attempted to explain why he needed the documents even though he had an unexpired passport  – (which was because, although the passport had not expired, there was now a newer version, and he expected that he would have trouble using the existing one) – but could not make himself understood in English.  Carroll then asked questions about Boskic's background.  At some point the agent displayed a document which he said was a criminal record from Tuzla, Bosnia.  He then stated that whenever someone has a criminal history, the FBI is notified.  He then left the office and returned with FBI agent Gregory Hughes.   Boskic was then questioned further about his background in Bosnia.  He still believed that he was being questioned only in connection with his application for travel documents and had no idea that this was part of a criminal investigation.

After a while, defendant was told that another person wanted to talk to him.  At this point, others entered the room, including Alistair Graham, who was identified as an investigator for the International Criminal Tribunal of the Former Yugoslavia, at the Hague, Netherlands ("ICTY").  With him was a Serbo-Croation interpreter.

-3-

Up until the point that Graham was introduced, all of the questions and answers were in English. Also, up until that point, defendant at all times believed that all of the questions concerned his application for travel documents. He likewise did not know that he could refuse to answer their questions. If he had known that he was under investigation, and that he could refuse, he would not have made any statements.

Graham told Boskic not to speak until he finished what he had to say. He told Boskic that they were investigating the Army of the Republika Srpska and Srebenica. He told Boskic that they had evidence of his involvement in the 10th Sabotage Detachment and in the events at Srebenica. Graham told defendant specifically that he was not a subject of the investigation. He said that they were only interested in whatever information Boskic had on senior officials. He asked if Boskic was willing to cooperate with the investigation – which defendant understood to mean that they wanted him to provide information that would help them investigate and prosecute senior officials. He agreed. As a result, he then made various statements concerning events in the former Yugoslavia. During the interview, Graham repeated several times that defendant was not the subject of the investigation, and that he needed his cooperation to prosecute other senior people. If Boskic had known that he was, in fact, the subject of an investigation he would not have made these statements.

After the questioning was finished, the investigators asked defendant to put his statement in writing. At this point, they finally told him that he was not required to do this. But he did so, as he had already told them everything and still believed that they were not investigating him personally. He also agreed to allow a search of his house, in order to locate addresses so that they could find other persons involved.

-4-

At some point, after defendant had already made statements to them disclosing events in Bosnia, he was given a number of documents to sign, including a form consenting to the search of his apartment. He did so. This was the only time he was asked to sign any documents. The Government obtained a signed Miranda waiver from the defendant, which is incorrectly marked "3:35 " p.m. (Exhibit E).

At the very end of the session, which was at about 8:30 pm, defendant was told that he was being arrested on a criminal warrant that had been issued in court earlier that day, that he would be taken to jail that night, and would see a judge in the morning. This was the first time that he was given any hint that he was a target of a criminal investigation. Until then, he accepted the repeated assurances that he was being interviewed only to obtain his cooperation in getting information on others.

## ARGUMENT

**I.    The Statements Were Obtained In Violation of the Sixth Amendment Since They Were Elicited in the Absence of Counsel after Defendant Was Formally Charged.**

A defendant in a criminal case enjoys the Sixth Amendment right to counsel from the time of "the initiation of adversary judicial proceedings – whether by way of formal charge, preliminary hearing, indictment, information or arraignment." Kirby v. Illinois, 406 U.S. 682, 689 (1972); Brewer v. Williams, 430 U.S. 387, 398 (1977). The Government may not interrogate an accused, after this point, in the absence of his counsel. Massiah v. United States, 377 U.S. 201, 205 (1964); Maine v. Moulton, 474 U.S. 159, 171 (1985), and any statement so elicited must be suppressed. Id.

The defendant was formally charged on August 25, 2004 <u>before</u> the investigators began
their questioning of defendant, in the absence of any attorney.   But since he had been formally
charged, the Government was obliged to wait until he was brought before the court, and either
had or waived the assistance of counsel, before it attempted to question him.   The statement was
therefore elicited in violation of the Sixth Amendment.  <u>Manning v. Bowersox</u>, 310 F.3d 571, 575
(8th Cir. 2002)("The right to counsel attaches to interrogations conducted after the initiation of
adversarial criminal proceedings; it is of no import whether the proceedings were initiated by
complaint or indictment.").  But see <u>United States v. Knowles</u>, 2 F. Supp.2d 1135, 1144 (E.D.
Wis. 1998).

**II.     The Statements Were Obtained In Violation of the Fourth Amendment Since
Execution of the Warrant was Deliberately Delayed to Gain a Tactical
<u>Advantage Over the Defendant.</u>**

Delay in execution of an arrest warrant is unreasonable and in violation of the Fourth
Amendment "when government agents have purposely delayed execution to gain a tactical
advantage not otherwise attainable."  <u>United States v. Drake</u>, 655 F.2d 1025, 1027 (10th Cir.
1981); <u>McKnight v. United States</u>, 183 F.2d 977 (D.C. Cir. 1950)(execution of arrest warrant
delayed to enable arrest search in, and search of, premises for which warrant could not have been
obtained).  See also cases involving search warrants, holding that a warrant must be executed
within a reasonable time:  <u>Spinelli v. United States</u>, 382 F.2d 871, 885 (8th Cir. 1967)
(unreasonable if the "purpose of the delay was to prejudice the rights of a suspect") rev'd. on
other grounds, 393 U.S. 410 (1969)); <u>United States v. Preston</u>, 915 F.2d 1566 (4th Cir. 1990);
<u>United States v. Bedford</u>, 519 F.2d 650, 655 (3d Cir. 1975).

Here, the agents had the defendant in their effective custody from 3 pm on August 25. There was only one reason for not executing the warrant at the outset – to obtain a statement from him. If he had been arrested the agents would have had to provide him with <u>Miranda</u> warnings at the outset of the interview. But more importantly, he would have known not only that he was under criminal investigation – but that he was actually the subject of criminal charges, contrary to the representations the agents made. In short, the agents could never have obtained his statements if he had known that he was under arrest, and they delayed execution of the warrant for this sole reason. This deliberate delay was, accordingly, unreasonable and prejudicial and in violation of defendant's rights.

### III. The Statements Were Obtained in Violation of the Fifth Amendment Since They Were Induced by the Agents' Affirmative Misrepresentations As to the <u>Purpose of the Investigation</u>.

The Fifth Amendment requires the Government to prove, by a preponderance of the evidence, that a statement is voluntary, <u>Lego v. Twomey</u>, 404 U.S. 477, 489 (1972), in the sense of being "the product of a rational intellect and free will. <u>Blackburn v. Alabama</u>, 361 U.S. 199, 208 (1960). It is well settled that when government investigators mislead a person as to the true nature of their investigation – as when they affirmatively represent the existence of a criminal investigation – they deprive the defendant of the ability to make a rational choice, the statement is involuntary, and it must be suppressed. The Fifth Amendment violation is established when it is shown that (1) "the agents affirmatively misled him as to the true nature of their investigation," and (2) "the misinformation was material to his decision to speak to the agents." <u>United States v. Serlin</u>, 707 F.2d 953, 956 (7th Cir. 1983); <u>United States v. Peters</u>, 153 F.3d 445, 451 (7th Cir. 1998); <u>United States v. Wadena</u>, 152 F. 3d 831, 851 (8th Cir. 1998); <u>United States v. Swint</u>, 15

F.3d 286, 290 n. 6 (3d Cir. 1994); United States v. Pinto, 671 F. Supp. 41, 58 (D. Me. 1987)(Cyr,

C.J.). This is related to the principle that any inducement, whether explicit or implied, renders a

confession involuntary if it deprives the defendant of a free and rational choice in the totality of

circumstances. Bram v. United States, 168 U.S. 532, 542-43 (1897); United States v. Jackson,

918 F.2d 236, 241-42 (1st Cir. 1990). See United States v. Pinto, supra, for an extended

discussion of Bram and its progeny.

    In United States v. Knowles, 2 F. Supp. 2d 1135 (E.D. Wis. 1998), a case very similar to

this one, a complaint had been issued and the agent had obtained a warrant for defendant's arrest.

But the agent omitted these facts and instead, falsely informed the defendant that he was "not in

trouble" and "would not be arrested," but was an "important witness" against others. Id. at 1147.

Once he gave his statement, he was then arrested on the warrant. The Court held that through this

"pattern of deceptions" "the defendant was deprived of his ability to make a rational choice about

whether to provide statements" to the agent, and therefore suppressed the statements. Id. at 1137.

See also United States v. Walton, 10 F. 3d 1024 (3d Cir. 1993)(statements involuntary where

defendant assured that his statements were "off the cuff," despite Miranda warnings); United

States v. Rogers, 906 F.2d 189 (5th Cir. 1990)(statement involuntary where defendant relied on

promise by sheriff's office that he would not be prosecuted if he cooperated, despite Miranda

warning by federal agent); United States v. Jacobs, 312 F. Supp. 619 (D.Del. 2004)(statements

involuntary where implied promises caused defendant to believe that she was acting as an

informant, and not suspect and had no reason to believe she was target); United States v. Conley,

859 F. Supp. 830 (W.D. Pa. 1994)(statements involuntary because of agent's promise that they

were "off the record"); United States v. Pinto, supra (implied promise of nonimprisonment or

nonprosecution in exchange for cooperation; despite <u>Miranda</u> warnings) .

This is as clear a case for suppression as there could be.  The agents engaged in an elaborate and obviously well-planned deception.  First, they set a trap for defendant – manipulating him into arriving at the interview believing that it was to receive the travel document for which he had applied.  The agents did not merely misrepresent the true nature of the their investigation – they concealed the fact that there was an investigation at all, leading him to believe that the interview was only about his application.  Then, when the ICTY investigator was brought in and questioning turned to events in Bosnia, defendant was told explicitly that he was not a subject of the investigation, that they were not interested in him, but sought his cooperation against other, senior persons.  And, of course, he was never told about the Complaint or warrant and not informed that he would be arrested at the end of the interview.

**IV.    The Search of the Defendant's Apartment was in Violation of the Fourth Amendment Since the Defendant's Consent Was Involuntary.**

The defendant's home was searched after his consent was obtained at the end of the series of interviews.  He gave his consent to assist the investigators to locate addresses so that they could find other persons involved – believing, as he did, that he was cooperating in an investigation of the others, and was not a subject himself.

The principles for determining the voluntariness of consent for a search are the same as those for determining the voluntariness of a confession.  <u>Schneckloth v. Bustamone</u>, 412 U.S. 218, 223 (1973).  See also  <u>United States v. Tweel</u>, 550 F.2d 297, 299 (5th Cir. 1977)(4th Amendment violation where IRS agents obtained consent to search by misrepresenting criminal nature of investigation).   Accordingly the proceeds of the search of defendant' home must be suppressed for the same reasons set forth above for the suppression of the statements.

**Conclusion**

For the reasons set forth above, the statements obtained on August 25, 2004, all evidence seized in the search of defendant's home, and all fruits of the statements and search, must be suppressed.

Respectfully submitted,

/s/ Max D. Stern
Max D. Stern
BBO No. 479560
Lillian Hirales
BBO No. 652698
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800

Dated: March 7, 2005

G:\SSWG\Boskic\Boskic suppress evidence memo.wpd