UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) ) ) ) ) ) | Case No. 04-CR-10298-DPW |
| MARKO BOSKIC |  |  |

**DEFENDANT'S REPLY TO GOVERNMENT RESPONSE
TO MOTION FOR EXCULPATORY EVIDENCE**

In response to defendant's Motion for Exculpatory Evidence, the government has identified the three confidential informants listed in its initial automatic discovery letter, but it has not provided the defendant with their statements, and it proposes to leave the defendant to his own devices to make contact with the witnesses. However, particularly in the circumstances of this case, the government owes far more to the defendant under the Due Process Clause and the Sixth Amendment, in order to assure that he receives a fair trial.

Further facts, to supplement those in defendant's opening filing, are as follows:

1. <u>Identifities of the informants</u>. The three informants, together with the summary descriptions in the letter are:

>CI1: Drazen Erdomovic (said to have information "that the defendant was drinking alcohol on the day of the killings at the Branjevo farm.")

>CI2: Zoran Obrenovic (said to have information "that individual soldiers who refused to obey orders where at risk of being shot by their superiors."

>CI3: Milorad Pelemis (said to have information "that soldiers were trained to obey orders."

    2. <u>Government interviews with informants</u>.  The government has further informed defense counsel that:

        a. AUSA West, with agents of the FBI and ICE, interviewed each of three of the informants, separately, during the course of two trips to Europe.  Each of these interviews were arranged with the assistance of the International Criminal Tribunal for the former Yugoslavia ("ICTY").  Two of the interviews were conducted with the assistance of an ICTY interpreter.

        b. Erdomovic is in the ICTY equivalent of the federal Witness Protection Program.  The interview with him was arranged directly by ICTY.  ICTY supplied the names and contact information of Obremovic and Pelemis, as well as other potential witnesses, who were then contacted directly by the federal investigators (after, presumably or probably, being notified by ICTY to expect the contact).

        c. The government possesses "302" reports for all the above interviews.  These reports contain no direct information concerning whether Boskic was coerced and do not indicate that the witnesses were asked whether he was coerced.  However, Obremovic stated that he refused to participate despite realizing that he could be shot for his refusal.

    3. <u>Known information about informants</u>.  Other information already known about the above persons is as follows:

        a. Drazen Ergomovic was one of a 10 member unit of the 10th Sabotage Detachment which participated in the portion of the July 16, 1995 events at Srebenica which occurred at the Branjevo farm near Pilicia and are the subject of this indicment.  As is defendant, Erdomovic was of Croat descent.  He pled guilty at the Hague to an indictment charging him with a violation of the laws and customs of war.  In his own case, and at various trials, he testified that he had personally shot approximately 100 persons.  He said that he was coerced into participating.  See e.g. Prosecutor v. Drazen Erdomovic, Sentencing Judgement (attached hereto) ¶14 ("If I had refused, I would have been killed together with the victims.  When I refused, they told me: 'If you are sorry for them, stand up, line up with them and we will kill you too.'")

      b. Milorad Pelemis was the Commander of the detachment. According to the statement given by defendant on August 25, 2004, Pelemis designated the defendant, Erdomovic and others to participate in the killings.  Defendant told Pelemis "that I did not want to do that.  He then approached me, put a pistol to my forehead, and said that I must or I would be dead.  PELEMIS told the COMMANDERS that in the event that anyone refused this task, they had the right to shoot them." (Attached Memorandum in Support of Defendant's Motion for Exculpatory Evidence, as Exhibit D).  Erdomovic testified to the ICTY tribunal that "I am sure that I would have been killed had I refused to obey because I remember that Pelemis had already ordered one man to slaughter another man and I am familiar with some other orders, I mean, what a Commander was entitled to do if he was disobeyed; he could order this person's liquidation immediately." (Exhibit A, Erdomovic Sentencing Judgement, ¶14).

    4.  <u>Other Cooperation between ICTY and DOJ in this prosection</u>.

In addition to the cooperation described above, the ICTY and the government cooperated in obtaining the statement of the defendant, which entailed a meticulously planned "ruse" (See Government's Opposition to Defendant's Motion to Suppress, p. 16), and the interrogation by an ICTY investigator.  This is set forth in detail in the Memorandum in Support of Marko Boskic's Motion to Suppress and attached documents.                                    .

## **ARGUMENT**

This issue as to the extent of the government's obligation to provide exculpatory evidence to the defendant and to assist him in obtaining witnesses must be resolved with appreciation of the unique obstacles he faces in defending himself, and the extreme imbalance of resources between the government and the defense.  This case concerns events occurring ten years ago, in the Balkans, and all of the witnesses are located in Europe – beyond the subpoena power of this Court.  To negotiate these difficulties the government enjoys the impressive investigative cooperation of the ICTY tribunal, but the defendant – who is detained here – has no

ability whatsoever to obtain evidence on his own.  Thus, the defendant is unusually dependent on the government to sustain his fair trial rights.

It is readily apparent from the above that all three of the informants in fact possess exculpatory information.  Erdomovic says <u>he</u> was coerced.  Obrenovic says <u>he</u> was at risk of death.  And Pelemis – according to both Boskic and Erdomovic – was the one doing the threatening.  Even Pelemis acknowleges – in some unknown context – "that soldiers were trained to obey orders.")  Moreover, given that the interviews were part of an investigation <u>of defendant Boskic</u>, it is impossible to understand why they were not asked – if they were not asked - whether Boskic was likewise under threat of death.  The government here has engaged in an extensive cooperative investigation with the ICTY tribunal, in which information has been shared in both directions.  In general, "[a] prosecutor 'has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.'"  <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995).  Clearly, ICTY has acted "on the government's behalf" here," as well as its own.  While it is true that "the government has no duty to produce evidence outside of its control," <u>United States v. Hughes</u>, 211 F.3d 676, 688 (1st Cir. 2000), whether the evidence is in fact beyond its grasp cannot be known until it tries and fails to obtain it.  In analogous contexts, it has long been acknowledged that "'the possibility of a refusal is not the equivalent of asking and receiving a rebuff.'" <u>Barber v. Page</u>, 390 U.S. 719, 724 (1968)(re. unavailability of witness for purposes of Confrontation Clause)(quoting and upholding dissenting opinion of Aldrich, J.); <u>Smith v. Hooey</u>, 393 U.S. 374 , 382 (1969) (Speedy Trial Clause).  See <u>United States v. Hughes</u>, <u>supra</u>, at 689 (government's lack of control established by "persistent, but fruitless, efforts to obtain" the evidence).

In all the circumstances, defendant is entitled to the following:

1. The full text of the "302" reports containing the informants' statements. Especially given that the witnesses are known to possess exculpatory information, it should not be left to the government to determine what part of the statements could actually be used by the defendant to his advantage. The necessity of full disclosure is graphically demonstrated by the gulf between what Erdomovic almost certainly said and the description furnished by the government. Undoubtedly, Erdomovic said something about coercion – of himself even if not Boskic – since he did every time he testified before the Hague tribunal and that alone would constitute exculpatory evidence. And yet the government reveals only that he said "that the defendant was drinking alcohol on the day of the killings at the Branjevo farm."

2. The agents' notes of the interviewers concerning the interviews – which should have been retained pursuant to Local Rule 116.9.

3. To the extent not recorded in the reports or original notes, the substance of what the witnesses stated at the interviews – according to each of the government participants - concerning coercion to which defendant was subjected.

4. To provide the defendant with the names and contact information of all persons whose names were supplied to it by ICTY as potential witnesses.

5. To request the assistance of ICTY to arrange interviews of the informants by defense counsel.

Respectfully submitted,

/s/ Max D. Stern
Max D. Stern
BBO No. 479560
Lillian Hirales
BBO No. 652698
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800

Dated: April 27, 2005

G:\SSWG\Boskic\exculp reply.wpd