## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————  )
                                                    )
UNITED STATES OF AMERICA          )
                                                    )        Case No. 04-CR-10298-DPW
                                                    )
                                                    )
                                                    )
        MARKO BOSKIC                       )
———————————————————)

## DEFENDANT'S REPLY TO GOVERNMENT'S
## OPPOSITION TO HIS MOTION TO SUPPRESS EVIDENCE

The government concedes that it "used a ruse to get the Defendant to come to the JFK Federal Building, and continued that ruse during the early stages of the interview." Government's Opposition, p. 16. What's more, it concedes that at least "at first, a reasonable man in the Defendant's position would likely have believed that he was being interviewed in connection with his request for travel documents." Id. Nor is there any dispute that once the true purpose of the investigation was revealed, when the ICTY investigator was brought in to continue the interrogation, defendant was repeatedly told that he was not the subject of the investigation and that, rather, his cooperation was being sought against senior officials.

Instead, the government contends that deceit and trickery, as a matter of law, do not constitute coercion in violation of defendant's Fifth Amendment self-incrimination or due process rights. The core of its argument is that Colorado v. Connelly, 479 U.S. 157 (1986), as interpreted by several First Circuit decisions – in particular United States v. Byrum, 145 F.3d 405, 407-08 (1998); United States v. Flemmi, 225 F.3d 78, 90 (2000) – an involuntary confession claim can no longer be premised on deceit or trickery, since Connelly limited the constitutional protection to claims of "coercive police activity." (at 167). But the government

reads far too much into both <u>Connelly</u> and the succeeding First Circuit cases, none of which held

that affirmative misleading misconduct of the type alleged here, does not constitute official

coercion.

<u>Colorado v. Connelly</u>

The issue in <u>Connelly</u>, of course, was not <u>what</u> constitutes coercion – but <u>whether</u> a

showing of coercion was required at all.  There the defendant had volunteered his statement.  He

claimed, however, that he was mentally ill, and that the statement was involuntary because it was

not the product of his "rational intellect" or "free will."  The Court rejected this claim, holding

that "[o]ur 'involuntary confession' jurisprudence is entirely consistent with the settled law

requiring some sort of 'state action' to support a claim of violation of the Due Process Clause of

the Fourteenth Amendment."  (at 521).  The Court had no occasion to review all of the types of

government misconduct which would constitute prohibited state action, and it plainly made no

suggestion that deception was excluded.  On the contrary, reviewing the requisites of a voluntary

Fifth Amendment waiver, it reiterated the standard articulated in <u>Moran v. Burbine</u>, 475 U.S.

412, 421 (1986), only nine months before, in which the Court defined an "uncoerced choice" as

one which is "the product of a free and deliberate choice <u>rather than intimidation, coercion or</u>

<u>deception</u>."  (At 170) (emphasis added).  And the Court then reaffirmed this view of "coercion,"

just over a month later, as well.  <u>Colorado v. Spring</u>, 479 U.S. 564, 574 (1987).

<u>The Application of Colorado v. Connelly to claims of Deception</u>

In <u>Byrum</u>, the defendant was interviewed by a state detective investigating concerning

his expected testimony at the state murder trial of one Boyce, who was charged with having held

a gun to the head of Bither, killed in a game of Russian Roulette.  Byrum had loaded the gun

earlier in the day.  After the detective told him that he was not "implicated in any of this,"

Byrum gave a statement and later testified in the Boyce trial.  Then, he was indicted for the

federal offense of being a felon in possession of a firearm.  He moved to suppress the statement,

arguing, inter alia, that "he was tricked by [the detective's] assurance that he was not implicated

in Bither's death." (at 408).  The Court rejected the claim.  It noted that Byrum "does not

seriously argue that [the detective] coerced him during the interview."  The Court also observed

that the assurance was "literally true so far as the murder charge was concerned," and, that, as to

the gun charge, it was "not clear" whether the detective who questioned the defendant had been

aware of the possibility of the federal possession prosecution.  The Court noted that "trickery is

not automatically coercion," and that ruses as to the character of evidence available against a

suspect have been upheld.

> While the line between ruse and coercion is sometimes blurred,
> confessions procured by deceits have been held voluntary in a
> number of situations.  <u>Frazier v. Cupp</u>, 394 U.S. 731, 739
> (1969)(confession obtained by false statement that co-conspirator
> had confessed); <u>see</u> <u>also</u> <u>Holland v. McGinnis</u>, 963  F.2d 1044,
> 1051 (7th Cir. 1992), <u>cert. denied</u>, 506 U.S. 1082 (1993).  <u>But</u> <u>see</u>
> <u>United States v. Rogers</u>, 906 F. 2d 189, 192 (5th Cir. 1990).

> Given the narrow definition of coercion in <u>Connelly</u>, it would be
> very hard to treat as <u>coercion</u> a false assurance to a suspect that he
> was not in danger of prosecution.

The meaning of the last sentence of the above quote is not clear, as it was pure dictim – there

was no evidence of any "false assurance" in that case.  Given the references to <u>Frazier v. Cupp</u>

and <u>Holland v. McGinnis</u>, however, it is likely that the Court was referring to the common police

practice of deceiving a suspect as to the extent of the evidence they have already obtained - a

situation not involved here.

In <u>United States v. Flemmi</u>, 225 F.3d 78, 91-92 (1ˢᵗ Cir. 2000), the defendant sought to characterize as involuntary statements overheard by electronic surveillance since agents with whom he had "developed a cordial (some might say cozy) relationship" had assured him – without authorization – that the statements would not be used against him.  The Court rejected the argument:

> The mere fact that an unfulfilled promise was made in exchange for a person's statement does not constitute coercion, rendering the statement involuntary or its fruits inadmissible.  (at 91).

> Of course, trickery can sink to the level of coercion, but this is a relatively rare phenomenon.  Here there is no evidence that Morris or Connally intended to mislead Flemmi or tried to dupe him.  At any rate, "confessions procured by deceits have been held voluntary in a number of situations."  <u>Byram</u>, 145 F.3d at 408 (citing cases).  Even if the government could be charged with deceit on this record – a matter on which we take no view – we would still regard Flemmi's statements as voluntary. (at 91, n. 5).

> In this instance the record will not support Flemmi's effort to treat as coercion the assurances that he would be held harmless from prosecution.  The <u>nisi prius</u> roll reveals no threats of retaliation, <u>see</u>, <u>e.g.</u>, <u>Lynumn v. Illinois</u>, 372 U.S. 528, 534 (1963), or of violence, <u>see</u>, <u>e.g.</u> <u>United States v. Rosario-Diaz</u>, 202 F.3d 54, 69-70 (1ˢᵗ Cir. 2000), and no evidence of consciously misleading conduct on the part of the FBI agents, <u>see</u>, <u>e.g.</u>, <u>United States v. Swint</u>, 15 F.3d 286, 290-91 (3d Cir. 1994).  Flemmi was neither incarcerated nor under investigation at the time of the asserted promise, and he enjoyed a friendly – even social – relationship with Morris and Connally.  (at 92).

Finally, in <u>United States v. Bezanson-Perkins</u>, 390 F.3d 34 (1ˢᵗ Cir. 2004), the defendant claimed that misleading statements made by the police concerning the nature of his right to counsel, and whether a statement could help him, rendered his statement involuntary.  The Court, after reaffirming the <u>Byrum</u>'s observation that "trickery is not automatically coercion," ruled against defendant on the facts, on the basis of that there was no deception at all since, in context, the police statements were not untrue.  (at 41).

-4-

So, then, what claims of deception continue to be viable?  <u>Bynam</u>'s observation that

"trickery is not <u>automatically </u>coercion," (emphasis added) also implies the converse: that <u>some</u>

types of trickery are, a proposition explicitly confirmed by the discussion in <u>Flemmi</u>.  One such

type, which is suggested by the First Circuit decisions and cases they cite, is where the police (1)

consciously mislead a suspect about (2) some consideration extrinsic to the evidence of his

connection to the crime such that (3), in the totality of circumstances, his will was overborne.

<u>Holland v. McGinnis</u>, 963 F.2d 1044, 1051-52 (7th Cir. 1992), cited by the <u>Bynum</u> court,

discusses the difference between a deception about the evidence, and one concerning

circumstances extrinsic to the crime:

> Inflating Holland's guilt interfered little, if at all, with his "free and
> deliberate choice" of whether to confess, <u>Moran v. Burbine</u>, 475
> U.S. 412, 421 (1986), for it did not lead him to consider anything
> beyond his own beliefs regarding his actual guilt or innocence, his
> moral sense of right and wrong, and his judgment regarding the
> likelihood that police had garnered enough valid evidence linking
> him to the crime.  In other words, deception did not interject the
> type of extrinsic considerations that would overcome Holland's
> will by distorting an otherwise rational choice of whether to
> confess or remain silent.

An example of deception concerning an extrinsic matter was in <u>United States v. Rogers</u>, 906

F.2d 189 (5th Cir. 1990) – also cited by the <u>Bynum</u> court.  Rogers was assured by the Sheriff's

office that he would not be arrested if he retrieved some guns stolen by one Thrasher, which he

then did.  Then he was requested by that office to return for further questioning concerning the

guns.  When he did, he was interviewed by two federal officers, who provided him with <u>Miranda</u>

warnings, but did not inform him that they were investigating him for being a felon in possession

of firearms.  The Court found his statement to be involuntary:

Because the interview was conducted under the auspices of the Lee County Sheriff's Department, whose representatives had assured Rogers that he would not be prosecuted for his purchase of the stolen guns. Rogers' statement was not "voluntary" for purposes of the Fifth Amendment. Rogers did not know that he was a suspect, and the federal agents in no way revealed to him that he rather than Thrasher was the target of their investigation.

(At 192).

The Flemmi court, at 92, suggested that coercive police tactics would include "consciously misleading conduct," relying upon United States v. Swint, 15 F.3d 286 (3d Cir. 1994). In Swint, the defendant was invited to a meeting with state authorities concerning potential cooperation, which he understood to be "off-the-record," based upon the common practice. Once he got there, and was engaged in a dialogue, DEA agents joined the meeting, confronted him with evidence against him and urged him to cooperate with them. He made a statement. The Third Circuit characterized this as a "coercive 'bait-and-switch' technique," which caused the Swint to believe that the federal agents would likewise not attempt to use the statements against him. "Although misleading an accused about the evidence against him might not render a confession involuntary, misleading him about whether his confession may be used against him should have that consequence in the circumstances of this case." (At 290, n.6).

There is no doubt that the investigators in this case developed and executed a detailed plan deliberately designed to mislead the defendant into giving up his right against self-incrimination. This "consciously misleading conduct" constituted, by definition, affirmative misrepresentation. And the deception was not just to mislead defendant as to the quantum of evidence the investigators had, but was calculated to make him believe that he was not under investigation at all. It deprived the defendant of the ability to make a rational choice, and thus violated his self-incrimination and due process rights under the Fifth Amendment.

## CONCLUSION

For the reasons set forth above, and in defendant's opening memorandum, his Motion to

Suppress Evidence should be granted.

Respectfully submitted,


/s/ Max D. Stern
Max D. Stern
BBO No. 479560
Lillian Hirales
BBO No. 652698
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800

Dated:  June 20, 2005.

G:\SSWG\Boskic\Suppress reply.wpd