UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | Case No. 04-CR-10298-DPW) |
| v. | ) ) |  |
| MARKO BOSKIC | ) ) |  |

**DEFENDANT'S CONSOLIDATED SUPPLEMENTARY MEMORANDUM
IN SUPPORT OF MOTION TO SUPPRESS AND MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS COUNT FIVE**

**Introduction**

Defendant has moved to suppress the statements obtained by investigators on August 25, 2004. He files this memorandum to supplement his prior memoranda[1] and also to support his contemporaneously filed Motion to Dismiss Count Five. To recapitulate, in brief, the statements in issue were procured by investigators conducting what the government concedes to have been an elaborate "ruse:" During the course of a lengthy interrogation, prosecutors first pretended to be interviewing defendant about his request for refugee travel documents. This was not true. After a considerable period of interrogation, they then disclosed to him that they were investigating his participation in the military and in a mass execution which took place in Bosnia in July 1995. At the same time, however, they told defendant that he was not a subject of the investigation. This was likewise not true. Defendant was not informed that he was under criminal investigation in the United States, much less that the investigators already had obtained a complaint and warrant for his arrest earlier that day.

---

[1] The Court granted leave to file a supplementary memorandum at the January 17 status hearing. See Clerk's Notes.

Defendant's prior memoranda argue that his statements were obtained in violation of his Fourth, Fifth and Sixth Amendment rights. His Fifth Amendment contentions in those filings focus on whether his statements were involuntary and obtained in violation of his right against self-incrimination. In this Supplementary Memorandum, defendant supplements the prior argument on involuntariness and also argues that the statements infringed his Fifth Amendment due process rights because the conduct of the investigators violated fundamental principles of fairness. For the same reasons, the defendant argues below, the Court should dismiss Count Five of the indictment, since that Count was obtained by laying what amounted to an unconstitutional "perjury trap" for the defendant. Defendant also presents further argument in support of his Motion for Discovery Related to His Motion to Suppress Evidence.

## Argument

**I.    The Government's Use of the Immigration Interview to Obtain Statements from Defendant for Use in a Pending Criminal Case Was Fundamentally Unfair and a Violation of Due Process.**

The surreptitious use of a civil investigation to obtain a person's statement for use against him in a criminal investigation is fundamentally unfair and therefore a violation of the due process guaranteed by the Fifth Amendment. In United States v. Kordel, 397 U.S. 1 (1970), the Supreme Court indicated that obtaining the defendant's admissions "where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution," would constitute "a violation of due process or a departure from proper standards in the administration of justice requiring the exercise of our supervisory power." Id. at 769. In Kordel, the Court found that there was neither a due process violation nor a departure from the proper

administration of justice because:

> 1. the government did not bring the "civil action solely to obtain evidence for its criminal prosecution";
>
> 2. the government had not "failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution"; and
>
> 3. the defendant had counsel during the questioning in the civil proceeding.

Id. at 669-670.

All of the factors necessary to establish a due process violation are indisputably present here. There was no purpose to the immigration interview other than to gather evidence for the criminal prosecution and, more specifically to induce false statements. Obviously, the investigators were not trying to determine whether defendant was entitled to travel documents. Applications for travel documents are normally processed on paper, by the Nebraska Service Center of the United States Citizenship and Immigration Services. Affidavit of Nancy Kelly (Attachment A, hereto).[2] In any event, they already had a warrant for his arrest – he was not going to be traveling anywhere. They used the travel documents pretext as a subterfuge, along with the immigration officer's actual and apparent power to make inquiry of an alien, to trick the defendant into answering their questions. He was interviewed for hours, without counsel, and without being warned that the interview was part of a criminal investigation. When defendant was eventually told the interview was part of an investigation into events in Bosnia in 1995, the interrogators assured the uncounseled defendant several times that he was not the "subject" or "target" of their investigation. Indeed, the government concedes that defendant was in fact

---

[2] The affiant, Nancy Kelly, is an experienced immigration practitioner and attests that she has applied for travel documents on numerous occasions and has never had a client interviewed.

misled.

In <u>United States v. Stringer</u>, 2006 WL 44193, a case squarely on point, the United States District Court for the District of Oregon, applied the <u>Kordel</u> factors and held that the government's use of a civil SEC investigation to gather evidence for a criminal prosecution was a violation of due process. In holding that the governmental action was "egregious," the <u>Stringer</u> Court found that the government had engaged in "deceit and trickery to keep the criminal investigation concealed"; and the government misled the defendant and his attorney "into believing he was not a target." [p.6]. In dismissing the indictments, the Court held:

> A government agency may not develop a criminal investigation under the auspices of a civil investigation. <u>United States v. Grunewald</u>, 987 F2d 531,534 (8th Cir. 1993). It would be a "flagrant disregard of individuals' rights" to "deliberately deceive, or even lull" someone into incriminating themselves in the civil context when "activities of an obvious criminal nature are under investigation." <u>Id</u>.

<u>Stringer</u>, at p.6.

Similarly, in <u>United States v. Parrott</u>, 248 F. Supp. 196 (D.D.C. 1965), where the government brought a civil SEC investigation to obtain information for a criminal prosecution, "the defendants received general warnings at some of these proceedings, [but] at no time were they informed of the fact that the matter had been referred to the U.S. Attorney's Office for criminal prosecution." <u>Id</u>. at 199. The Court condemned the government's action holding "that the Government may not bring a parallel civil proceeding and avail itself of civil discovery devices to obtain evidence for subsequent criminal prosecution." <u>Id</u>. at 202. The Court noted that even if defendant had been given <u>Miranda</u> warnings prior to the time he provided the statement in issue, it would not have mattered: "The giving of the warning cannot have much significance where the defendant was, so to speak, then within the sights of the Government and

did not receive an explanation of the true import of the inquiry." Id. at 201. United States v. Robson, 447 F.2d 13, 18 (9th Cir. 1973) (finding due process violation where government "affirmatively mislead[s] the taxpayer into believing that the investigation...will not lead to criminal charges"); United States v. Rand, 308 F.Supp.1231 (N.D. Ohio, 1970) (dismissing indictments where government began a "pointless" civil proceeding to garner evidence for a "pending" criminal proceeding without advising defendants, who had counsel, of the pending criminal action and defendant believed he had immunity);  See also United States v. Babb, 807 F.2d 272 (1st Cir. 1986) (holding that if grand jury witness is given Miranda warnings and "informed of the subject matter of the grand jury's inquiry," prosecutor's misrepresentation about witness's target status, while troublesome, does not amount to fundamental unfairness. Id. at 278-279 [emphasis added]); United States v. Simone, 627 F. Supp. 1264 (D. New Jersey, 1986) (finding that government's conduct in not revealing the existence of defendant's tape recorded conversations prior to his in-court testimony not fundamentally unfair when defendant is given Miranda rights and "warned repeatedly prior to questioning" that he is "under criminal investigation for his involvement in a stated crime." Id. at 1269).

    Here, the government instigated the travel-document interview for the sole purpose of gaining information for use in the criminal case. The government agents deliberately chose not to formally execute their warrant in order to conceal the criminal charge and thus, also, avoided their obligation to take defendant before a magistrate without unnecessary delay. Fed. R. Crim. P. 5(a)(1)(A).[3] At no time prior to telling the defendant that he was going to be placed under

---

[3] See also 8 C.F.R. §287.2: "In no case shall this investigation [initiated by a special agent in charge] prejudice the right of an arrested person to be taken without unnecessary delay before a United States magistrate judge . . . ."

arrest (which the government claims occurred at 8:20 p.m. – after five hours of questioning) was the defendant informed that a criminal prosecution of him had commenced.  On the contrary, he was repeatedly and falsely advised that he was not a target of the investigation.  Finally, defendant did not have counsel at any stage during this seven hour interrogation.

The government engaged in deceit and trickery to keep its criminal investigation concealed.  They flagrantly disregarded defendant's rights.  This case clearly falls within the scenario contemplated by the Supreme Court as a "violation of due process."  United States v. Kordel, 397 U.S. at 769.

**II.     The Defendant's Statements Were Involuntary.**

According to defendant's affidavit, he believed that he was under an obligation to answer the questions of the immigration agent.  Affidavit of Marko Boskic, ¶9.  This would hardly be an unreasonable belief for a non-citizen, as an immigration officer has the "power without warrant . . . to interrogate any alien . . . as to his right to be or to remain in the United States."  8 U.S.C. §1357(a)(1). Even if the defendant had been given timely Miranda warnings, and understood them, and even if the agent advised – which he clearly did not – that a refusal to answer would not be held against him in an immigration proceeding,[4] it is undeniably the case that any alien in defendant's position would have felt compulsion to do so.  In that situation, a decisive factor would have to be – as indeed it was here, Affidavit of Marko Boskic, ¶10 – the fact that defendant did not know that he was the subject of a criminal investigation.  The government counters, however, that defendant's lack of knowledge – caused by its calculated concealment –

---

[4] He could not have so advised.  An inference against the alien could be drawn from the refusal to answer questions even if the refusal was based upon an invocations of the alien's Fifth Amendment right.  E.g. Witter v. INS, 113 F.3d 549, 555 (5th Cir. 1997).

is of no moment because its narrow definition of "coercion" excludes deception. Congress, however, has mandated that in considering whether a defendant's confession is "voluntary," a federal court must consider (along with other factors) "whether [the] defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession." 18 U.S.C. §3501(b).[5] In the totality of circumstances which the Court must

---

[5] The statute provides, in full:

**(a)** In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

**(b)** The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

**(c)** In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such

consider in

determining voluntariness, there can therefore be no doubt that the defendant's ignorance that he

was the subject of a criminal investigation plays a critical, and legally cognizable, role.

>   **III.    The Defendant's Alleged Statements That Form the Basis of Count Five of the Indictment Were Induced by the Government Through a Hoax and Therefore Constituted an Abuse of Governmental Investigatory Power in Violation of the Defendant's Due Process Rights under the Fifth Amendment to the United States Constitution.**

Count Five of the indictment alleges that defendant made a false statement in violation of

18 USC § 1001, when he stated, at the August 25, 2004 interrogation, that he "had only

previously served in the Yugoslav National Army and no other." However, this statement

cannot be used as the basis for a criminal offense because defendant was unconstitutionally

trapped by the investigators into making it.

The government does not dispute that its interview of the defendant on August 25, 2004,

ostensibly relating to the defendant's request for refugee travel documents, was a ruse. At the

time of the interview, the government had already obtained a warrant for the defendant's arrest.

---

confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer.

**(d)** Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention.

**(e)** As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing.

The defendant was not going to be allowed to travel. The government called for and designed the interview with the sole purpose of inducing the defendant into repeating the allegedly false statements regarding his military service, which he had made on two previous occasions, so that it could indict him for doing so.[6] This set-up by the government constituted a classic "perjury trap," in violation of the defendant's rights under the due process clause of the Fifth Amendment, and requires dismissal of Count Five.

Although this is a false statement prosecution under 18 USC § 1001, the due process principles developed in perjury cases clearly apply to this situation as well. "A 'perjury trap' is created when the government calls a witness…for the primary purpose of obtaining false testimony from him in order to prosecute him later for perjury." Wheel v. Robinson, 34 F.3d 60, 68 (2nd Cir. 1994) citing United States v. Chen, 933 F.2d 793, 796-97 (9th Cir. 1991); United States v. Simone, 627 F.Supp 1264, 1268 (D.N.J. 1986); United States v. Crisconi, 520 F.Supp 915, 920 (D.Del 1981). The issue to be determined with regard to this defense is "whether there was a premeditated design on the part of the government to trap the witness into perjury in such an unfair way that a due process test may provide a viable defense. . .Basic to the concept of 'fairness' to a witness is the government's warning of and the witness' knowledge of (1) the subject matter of the government's inquiry and (2) the witness' constitutional rights." United States v. Simone, *supra* at 1269. (emphasis added). Accordingly, the government may not use the subterfuge of a civil proceeding in which it intentionally hides its intentions to prosecute the defendant in order to gain incriminating information. See United States v. Scrushy, 366 F.SuppA2d 1134, 1137 (N.D. Al. 2005) (dismissing indictments for perjury where the

---

[6] The first occasion was September 3, 1999, on Form I-590, the second on April 5, 2001, on Form I-485,

government intentionally kept from the defendant its intention to use an SEC investigation in order to gain information to be used in the criminal matter); United States v. Waldon, 363 F.3d 1103, 1112-13 (11th Cir. 2004); United States v. Parrott, 248 F.Supp. 196 (D.D.C. 1965) (dismissing indictments where government's civil investigation was used to gain information to be used in the criminal matter.)

In the present case, the government used the pretext of an interview for refugee travel documents to induce the defendant into committing the crime for which he is indicted in Count Five. All of the tactics condemned by the cited authorities exist in the present case. First, the government did not simply fail to warn the defendant of the subject matter of the government's inquiry, but created a situation intentionally to mislead the defendant as to that very fact. The government agents told the defendant that the purpose of their questioning was his application for refugee travel documents. The defendant had no knowledge that at the very moment he was answering the government's questions, a warrant had already been obtained for his arrest. Thus, use of a pretextual interview for refugee travel documents to gain incriminating information from the defendant was an abuse of the government's power and violated the requirement of fundamental fairness embodied in the due process clause. Accordingly, Count Five of the indictment must be dismissed.

    **IV.    The Court Should Allow Defendant's Motion for Discovery Seeking the Identities of Persons Involved in the Planning for Defendant's Arrest and Interrogation.**

Defendant has moved for the identities of the persons involved in planning the ruse used to procure his statement. He previously filed a memorandum in support of his motion (July 29, 2005). The Court has not yet ruled on the motion. At the January status hearing, defense counsel

noted that the supplementary authorities would bear on this issue as well and the Court indicated that defendant may likewise address the discovery issue in this supplementary memorandum.

The government's contention has been that whatever happened before August 25 is irrelevant and immaterial. However, the cases cited above, which apply due process-fundamental fairness principles to the use of the civil investigatory process to gain evidence for a criminal prosecution, make clear that this is not so. These cases consistently engage in full exploration of the decision-making process leading to the use of the civil process. See United States v. Kordel, 397 U.S. at 6 (noting that District Judge held an "extensive evidentiary hearing" on motion to suppress and in particular, the question of government's bad faith"); United States v. Stringer, 2006 WL 44193 (District Judge held eleven days of evidentiary hearings on question of whether defendants due process rights were violated because they were not advised that the prosecutor was using the SEC to gather evidence for a criminal proceeding); United States v. Scrushy, 366 F.Supp.2d 1134 (N.D. Ala. 2005) (District Judge conducted evidentiary hearing where focus of hearing concerned prosecutorial and SEC planning of so-called investigation); United States v. Parrott, 248 F.Supp.196, 201 (D.D.C. 1965) (noting that "the circumstances surrounding the taking of defendant's testimony were such as to require a careful investigation into the degree of taint attached to such testimony because of procedures utilized by SEC"); United States v. Thayer, 214 F.Supp.929, 933 (D. Colo. 1963) (finding that "the circumstances are such as to require careful investigation of the circumstances surrounding the taking of the testimony which led to this indictment"); United States v. Lipshitz, 132 F.Supp.519, 521 (E.D. N.Y. 1955) (District Judge conducted hearing so that "a comprehensive inquiry could be made into the manner in which such information was obtained, its nature and

extent, and the direct and derivative use, if any, which was made thereof.")

## Conclusion

For the foregoing reasons, and for the reasons set forth in defendant's previously filed memoranda, the statements obtained on August 25, 2004, all evidence seized in the search of defendant's home, and all fruits of the statements and search, must be suppressed. Additionally, Count Five of the indictment must be dismissed. Furthermore, this Court should order the government to produce the identities of all persons involved in the planning of this ruse to procure defendant's statement.

Respectfully submitted,

/s/ Max D. Stern
Max D. Stern
BBO No. 479560
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800

Dated: February 21, 2006.

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on  2/21/06 .

/s/ Max D. Stern

G:\SSWG\BOSKIC\supplementary memo2.wpd