UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| V. | ) | Criminal No. 04-10298-DPW |
| | ) | |
| | ) | |
| MARKO BOSKIC | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND
RESPONSE TO DEFENDANT'S CONSOLIDATED SUPPLEMENTARY MEMORANDUM IN
SUPPORT OF MOTION TO SUPPRESS AND MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS COUNT FIVE

The defendant has filed a motion to suppress Count Five, and
has supplemented his previously filed motion to suppress.  For
the reasons stated herein and in Government's Opposition to
Defendant's Motion to Suppress filed in March 2005, the
defendant's motions should be denied.

1. Defendant's Supplementary Memorandum in Support of
Motion to Suppress

The government relies on the arguments previously made, in
particular the cases cited and discussed at pages 15 through 17,
and 20 through 24 of Government's Opposition to Defendant's
Motion to Suppress, that was filed in March 2005.  In addition,
the cases cited by defendant in his most recent submission are
easily distinguishable.

For example, in a case that the defendant identifies as
"squarely on point," United States v. Stringer, 408 F.Supp.2d
1083 (D.Or. 2006), the Securities and Exchange Commission ("SEC")
conducted a civil investigation that lasted over two years,
essentially as a proxy for the Federal Bureau of Investigation

("FBI") and the United States Attorney's Office ("USAO").  "The
civil and criminal investigators communicated regularly
throughout the civil investigation, exchanging information and
discussing strategy."  408 F.Supp.2d at 1086.  The USAO
identified potential targets and "elected to gather information
through the SEC instead of conducting its own investigation."
408 F.Supp.2d at 1087.  Further, the defendants were subpoenaed
by the SEC and told that "disclosure of information to the SEC is
mandatory."  408 F.Supp.2d at 1086.

     Similarly, in United States v. Parrott, 248 F.Supp. 196
(D.D.C. 1965), that was also cited and extensively quoted by the
defendant, the SEC conducted a two-year investigation, filed two
different civil suits, purposely concealed the identity and
presence of a criminal government attorney at a civil court
proceeding, and falsely denied that criminal proceedings had been
instituted.  248 F.Supp. At 198-199.

     In this case, contact with Immigration and Customs
Enforcement ("ICE") was initiated by the defendant.  No civil
court process was instituted, no subpoena, deposition,
interrogatories or other process that compels compliance or
responses were utilized.  No false statements were made about
criminal process.  To the extent that any civil "process" was
utilized, it was simply a request that the defendant come into
the ICE offices.  The defendant was then advised that he could

refuse to answer questions.

    2.    Defendant's Motion to Dismiss Count Five

        a.    Even a Violation of Defendant's Rights does not Excuse False Statements

"Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings." United States v. Mandujano, 425 U.S. 564, 576 (1976). An alleged constitutional violation is not a defense to perjury or false statements. "Every criminal defendant is privileged to testify in his own defense, or refuse to do so. But that privilege cannot be construed to include the right to commit perjury." Harris v. New York, 401 U.S. 222, 225 (1971). "[A] claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit." Dennis v. United States, 384 U.S. 855, 865 (1966) (involving a false affidavit filed with an executive branch agency).

The general holding that an alleged illegality does not excuse perjury or false statements is well established and long-standing. In 1937, the United States Supreme Court ruled that a defendant may not raise as a defense to a perjury charge the question of the constitutionality of the statute that required him to provide the information that was allegedly false. United States v. Kapp, 302 U.S. 214, 218 (1937). Similarly, in Kay v. United States, 303 U.S. 1, 6 (1938), the defendant, who was charged with making false statements to the Home Owner's Loan

3

Corporation, argued that the statute was invalid and Congress had no authority to create the Corporation.  The Supreme Court held that a defendant who attempts to cheat the government by providing false information, "has no standing to assert that the operations of the Government in which the effort to cheat or mislead is made are without constitutional sanction."  <u>Kay</u>, 303 U.S. at 6.

In a similar case, the Supreme Court more broadly discussed this basic principle: "The governing principle is that a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit."  <u>Dennis v. United States</u>, 384 U.S. 855, 865 (1966).  In <u>Dennis</u>, the defendants were charged with conspiracy based on union officials having filed false "non-Communist" affidavits, that is, asserting that the officials of the union were not members of and did not support the Communist Party.  384 U.S. at 857-858.  The defendants sought to set aside their convictions on the grounds that the statute which required the affidavits was unconstitutional.  (The statute that had been passed by Congress to replace the statute in question had already been found by the Supreme Court to be unconstitutional.  384 U.S. at 864.)  The Supreme Court would not consider the constitutionality of the statute.  <u>Dennis</u>, 384 U.S. at 865.  The Court held that "[i]t is no defense to [the] charge ... that the statutory scheme sought

4

to be evaded is somehow defective." <u>Dennis</u>, 384 U.S. at 866.

The Supreme Court observed that this holding was not a deviation

from prior precedents of the Supreme Court, citing <u>Kay</u> and <u>Kapp</u>.

<u>See</u> <u>id.</u> In addition, the Court found

> [a]nalogous ... those cases in which prosecutions for
> perjury have been permitted despite the fact that the trial
> at which the false testimony was elicited was upon an
> indictment stating no federal offense (such as <u>United States
> v. Williams</u>, 341 U.S. 58, 65-69 ... ); that the testimony
> was before a grand jury alleged to have been tainted by
> governmental misconduct (<u>United States v. Remington</u>, 208
> F.2d 567, 569 (2d Cir. 1953) ...) or that the defendant
> testified without having been advised of his constitutional
> rights (<u>United States v. Winter</u>, 348 F.2d 204, 208-210 (2d
> Cir. 1965) ...

<u>Dennis</u>, 384 U.S. at 866.

This rule applies whether the defendant is charged with

perjury at a trial, before a grand jury, or by affidavit, as well

as false statement to an agency of the executive branch of

government.  In <u>Bryson v. United States</u>, 396 U.S. 64, 66-67

(1969), the lower court reversed a defendant's conviction under

the false statement statute, 18 U.S.C. §1001 (the same statute

that is the subject of Count Five in this case), on the grounds

that the government had no right to ask the questions that the

defendant answered falsely, in that the statute which required

him to file an affidavit concerning any affiliation with the

Communist Party abridged his first amendment rights.  The Supreme

Court affirmed the Court of Appeals which had reversed the lower

court, and held that "the question of whether [the statute] was

constitutional is not legally relevant to the validity of

petitioner's conviction under §1001." Bryson, 396 U.S. at 68.

> It cannot be thought as a general principle of our law a
> citizen has a privilege to answer fraudulently a question
> that the Government should not have asked.  Our legal system
> provides methods for challenging the Government's right to
> ask questions -- lying is not one of them.  A citizen may
> decline to answer the question, or answer it honestly, but
> he cannot with impunity knowingly and willfully answer with
> a falsehood.

Bryson, 396 U.S. at 72.

In United States v. Knox, 396 U.S. 77, 78 (1969), the

defendant provided false information required by the Internal

Revenue Code, and was charged, inter alia, with a violation of 18

U.S.C. §1001.  The defendant argued that he had three choices:

first, violate the statute by refusing to provide the required

information; second, provide a truthful answer in violation of

his fifth amendment privilege; or three, provide false

information.  Knox, 396 U.S. at 81.  The trial court had

dismissed the indictment on the grounds that the statute which

required him to provide said information was unconstitutional.

Knox, 396 U.S. at 78, 81.  Reaffirming the holdings in Bryson,

Dennis, (which involved arguments based on an alleged abridgement

of first amendment rights) and other cases, the Court stated that

"[w]e do not think that the different constitutional source for

Knox's claim [i.e., the fifth amendment,] removes his case from

the ambit of the principle laid down in those decisions."  Knox,

396 U.S. at 80.

In <u>United States v. Mandujano</u>, 425 U.S. 564 (1976), the Supreme Court reaffirmed that "our cases have consistently indeed without exception allowed sanctions for false statements or perjury; they have done so even in instances where the perjurer complained that the Government exceeded its constitutional powers in making the inquiry." <u>Mandujano</u>, 425 U.S. at 577. The Supreme Court's holding was based on the view that "[p]erjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative." <u>Mandujano</u>, 425 U.S. at 576. The Court stated its agreement "with the views expressed by Judge Rivers in [<u>United States v.</u>]<u>Orta</u>", who stated: "Under no circumstances ... could he [a grand jury witness] commit perjury and successfully claim that the Constitution afforded him protection from prosecution for that crime." <u>Mandujano</u>, 425 U.S. at 570, quoting <u>United States v. Orta</u>, 253 F.2d 312, 314 (5th Cir. 1958). The Court did not distinguish between the obligation of a witness before a grand jury from one who appears before a petite jury, or some "other duly constituted tribunal":

> a witness sworn to tell the truth before a duly constituted grand jury will not be heard to call for suppression of false statements made to that jury, any more than would be the case with false testimony before a petit jury or other duly constituted tribunal. In another context [the Supreme] Court has refused to permit a witness to protect perjured testimony by proving a Miranda violation. [<u>Harris v. New York</u>] ... [N]otwithstanding a Miranda violation: "(The Fifth

7

Amendment) privilege cannot be construed to include the right to commit perjury."

Mandujano, 425 U.S. at 583 (footnote omitted), quoting Harris v. New York, 401 U.S. at 225.

In United States v. Wong, 431 U.S. 174, 175 (1977), the defendant had been indicted for perjury based on testimony before the grand jury.  Although the defendant had been warned that she could refuse to testify, the trial court found, in granting the defendant's motion to suppress, that she did not understand that she did not have to answer the prosecutor's questions.  Wong, 431 U.S. at 177.  Thus, the defendant "in legal effect, was unwarned of her Fifth Amendment privilege."  Wong, 431 U.S. at 176-177. The defendant argued that

> without effective warning, she was in effect forced by the Government to answer questions, and that her choice was confined either to incriminating herself or lying under oath.  From this premise, she contends that such testimony, even if knowingly false, is inadmissible against her as having been obtained in violation of the constitutional privilege.

Wong, 431 U.S. at 177.  Nevertheless, the Supreme Court reversed the suppression of her perjurious testimony.  Id.  A violation of a constitutional privilege does not protect a defendant from a prosecution for perjury.  '[T]he Fifth Amendment privilege does not condone perjury.  It grants a privilege to remain silent without risking contempt, but it "does not endow the person who testifies with a license to commit perjury."'  Wong, 431 U.S. at 178, quoting Glickstein v. United States, 222 U.S. 139, 142

8

(1911) (involving false testimony in bankruptcy proceeding).

The Court further stated that the defendant in Wong was in a weaker position than the defendant in the earlier Supreme Court Knox case, because the defendant in Knox would have committed a crime if he had refused to answer the questions (on the tax forms). See Knox, 396 U.S. at 81; Wong, 431 U.S. at 179. Wong's refusal to answer would not have constituted a crime. See Wong, 431 U.S. at 179. Similarly, the defendant Boskic was not compelled to provide the information he did; it was his choice. He has not argued and cannot argue that he was in any way compelled to answer.

Even if Boskic had perceived some level of compulsion, nevertheless, the holding of the Supreme Court would necessitate denial of his motion. The defendant in Wong argued that fundamental unfairness of her grand jury appearance violated due process. See Wong, 431 U.S. at 176. Wong argued that she did not understand that she could refuse to testify, and, therefore, her testimony was compelled. See id. The government did not challenge the findings of the trial court that Wong thought she was required to answer all questions. Wong, 431 U.S. at 176-177. The Supreme Court, in reversing the suppression order, stated: "accepting, arguendo, respondent's arguments as to the dilemma posed in the grand jury procedures here, perjury is nevertheless not a permissible alternative." Wong, 431 U.S. at 179 (footnote

9

omitted).  The Supreme Court, in rejecting Wong's arguments,
noted that "the [Supreme] Court has consistently held, perjury is
not a permissible way of objecting to Government's questions."
Wong, 431 U.S. at 180.

In United States v. Orta, 253 F.2d 312 (5th Cir. 1958), the
trial court suppressed the defendant's grand jury testimony and
dismissed a perjury indictment.  The court found that the
defendant was not sufficiently familiar with the English language
to understand that he had a right to refuse to answer questions.
Orta, 253 F.2d at 314.  In addition, he was not represented by
counsel.  See id., at 313-314.  The Court of Appeals for the
Fifth Circuit reversed.

> A witness, ignorant and uninformed of his constitutional
> rights, would not intelligently waive them if he testified,
> thinking that he was compelled to do so.  He might answer
> truthfully and thereafter assert the constitutional
> guaranty.  Under no circumstances, however, could he commit
> perjury and successfully claim that the Constitution
> afforded him protection from prosecution for that crime.

253 F.2d at 314 (footnote omitted).  See also Wong, 431 U.S. at
177-178.

In addition, the defendant Boskic failed to prove the
necessary nexus between the alleged misconduct (violation of his
rights) and his false statements.  Although the defendant may
argue that he was tricked into providing inculpatory information,
he cannot say that trickery induced him to provide false
information.  In United States v. Babb, 807 F.2d 272 (1st Cir.

10

1986), the Court of Appeals for the First Circuit considered whether misrepresentations by the prosecutor to a grand jury witness were grounds to suppress his testimony and overturn his perjury conviction.  When the defendant appeared before the grand jury, he was incarcerated and appeared without counsel.  807 F.2d at 274-275.  The prosecutor affirmatively misrepresented his status as a target.  Babb, 807 F.2d at 276.  First, the Court of Appeals discussed the basic rule that "[t]he privilege against self incrimination ... does not shelter perjury." Babb, 807 F.2d at 277, quoting United States v. Chevoor, 526 F.2d 178, 181 (1st Cir. 1975).  The Court went on to reject the defendant's basic argument that the violation of his rights resulted in the government obtaining evidence which must now be suppressed.

> In fact, it defies logic to argue that assurances that might have lulled a witness into giving incriminating statements had the effect of inducing the witness to commit perjury. Consequently we find that [the defendant] failed to establish the necessary nexus between the alleged misconduct and his subsequent perjured testimony in order to support a claim of fundamental unfairness.

Babb, 807 F.2d at 279.  Similarly, the alleged violation of his rights cannot be said to have induced Boskic to lie to the investigators.  See also United States v. Winter, 348 F.2d 204, 209 (2d Cir. 1965) (rejecting a defendant's argument that perjury can be fruit of the government's (mis)conduct); Cf. United States v. Masters, 484 F.2d 1251, 1253-1254 (10th Cir. 1973) (affirming defendant's conviction of perjury for false statements made

11

during an evidentiary hearing in a habeas corpus proceeding, during which he did not have counsel. The court, first, noted that there is "no absolute right to appointment of counsel ... in habeas actions," and, secondly, "the fact that [the defendant] was not represented by counsel is not justification for his making positive statements under oath known to him to be untrue.")

In Winter, the Court of Appeals for the Second Circuit held that even if the defendant's sixth amendment right was violated before the grand jury, said violation "is no defense to a charge that he thereafter perjured himself." 348 F.2d at 208.

Similarly, in Orta, the Court of Appeals for the Fifth Circuit refused to recognize a nexus between lack of adequate warnings and the defendant's perjury, in part, because:

> [p]erjury is one of the most elemental of all crimes. Every sane person from the beginning of time has recognized its moral iniquity. No one can fail to know that any civilized system of laws must denounce perjury because it pollutes the very fountainhead of justice.

Orta, 253 F.2d at 315.

In United States v. Olmeda, 839 F.2d 1433 (11th Cir. 1988), a perjury prosecution of a grand jury witness, the defendant moved to suppress her grand jury testimony, claiming that her fifth and sixth amendments rights were violated when the prosecutor continued questioning her after she told him she wanted an attorney. Olmeda, 839 F. 2d at 1434. The Court of

Appeals for the Eleventh Circuit decided not to decide whether the Constitution required that questioning cease and counsel be appointed. <u>Olmeda</u>, 839 F.2d at 1437. "[E]ven if appellant has a constitutional right to consult with an attorney during the course of the grand jury proceeding, the failure of the government to provide an attorney for her does not excuse perjury on her part." <u>Olmeda</u>, 839 F.2d at 1437. <u>See also United States v. Weiss</u>, 752 F.2d 777, 785-786 (2d Cir. 1985) (denying defendant's motion to suppress, based on alleged misconduct by the government that violated of his sixth amendment right, by, <u>inter alia</u>, not advising him of a known conflict of interest concerning defense counsel, because a witness sworn to tell the truth cannot suppress his false statements to the jury).

In <u>Kang v. Cooper</u>, 1999 WL 412437 (N.D. Ill. 1999), a habeas corpus petition brought by a defendant convicted of perjury, the defendant argued that his fifth and sixth amendment rights were violated when the prosecutor called him as a witness in a coconspirators trial while his appeal of his own conviction was still pending, and without his counsel being present. The defendant argued that these violations should result in suppression of his allegedly perjurious testimony. <u>Kang</u>, 199 WL 412437 at 4. The court refused to consider whether his rights had been violated, and denied the defendant's motion; in doing so the court stated:

13

> even assuming that [the defendant] had a Fifth and Sixth
> Amendment right that was violated, he still cannot complain
> about the use of his testimony at a subsequent perjury trial
> because of the common sense principle -- set forth by the
> United States Supreme Court on numerous occasions -- that a
> witness may not resort to perjury as a way of responding to
> perceived constitutional violations.

Kang, 199 WL 412437 at 5.

In addition, in Knox, the Supreme Court found the basic

principle enunciated in Bryson, and Dennis, which involved

arguments based on an alleged abridgement of first amendment

rights, equally applicable in a case involving an alleged claim

of fifth amendment violation.  ("We do not think that the

different constitutional source for [the defendant]'s claim

[i.e., the fifth amendment,] removes his case from the ambit of

the principle laid down in [the earlier] decisions." Knox, 396

U.S. at 80.  Similarly, the court in Kang found "that this same

general principle, logically extended, also undermines [the

defendant]'s Sixth Amendment right to counsel argument."  1999 WL

412437 at 8.  See also Winter, 348 F.2d at 208 (cited with

approval by the Supreme Court in Dennis 384 U.S. at 866)

(assuming there was a violation of a grand jury witness' sixth

amendment rights, that violation was not a defense to perjury).

The court in Kang rejected the defendant's defenses to

perjury, in part, on reliance on certain basic principles

concerning our legal system:

> It is an elemental part of our legal system that every
> witness must be expected to tell the truth when he or she

gets on the witness stand.  There must be a presumption that
every witness understands this basic point and does not need
counsel to advise him that perjury is not an option even
when the witness believes the trial judge has ruled
incorrectly.  Even with counsel present, a judge may order a
witness to testify.  Whether it later turns out that the
judge was right or wrong, our system is based on the fact
that once the witness takes the stand he may not commit
perjury.  Instead every witness must be expected to follow
the straightforward rule -- "If [you] answer[] the question,
the answer must be truthful."  <u>Wong</u>, 431 U.S. at 180.

1999 WL 412437 at 8.

      b.   There was no "Perjury Trap"

     The defendant cites the concept referred to as a "perjury

trap" as the basis for his argument that the defendant's false

statement should be suppressed and the count based on his false

statement should be dismissed.  First, the whole concept seems to

be inconsistent with the line of cases discussed above.  Second,

"perjury trap," which essentially is an entrapment defense in a

perjury case, is not a concept that is universally accepted.

<u>See</u>, <u>e.g.</u>, <u>United States v. Regan</u>, 103 F.3d 1072, 1079 (2d Cir.

1997) ("this court has discussed but not adopted" the perjury

trap doctrine); <u>United States v. Chen</u>, 933 F.2d 793, 797 (9th

Cir. 1991) ("[t]he Ninth Circuit has not yet recognized the

perjury trap doctrine"); <u>United States v. Burke</u>, 425 F.3d 400,

408 (7th Cir. 2005) ("[w]e have not embraced this [perjury trap]

doctrine;" "[w]hy would a prosecutor be forbidden to give a

suspect an opportunity to commit the crime of perjury?").

Third, to the extent that such a doctrine might provide a basis for dismissing a perjury count, the facts in this case do not make out a "perjury sting operation." United States v. Brown, 49 F.3d 1162, 1168 (6th Cir. 1995).  Where the government is conducting a legitimate investigation and is endeavoring to obtain useful information, "the perjury trap is, by definition, inapplicable." Chen, 933 F.2d at 797; Chevoor, 526 F.2d at 185. In this case, the government had a legitimate interest in questioning the defendant (and in seeking his cooperation on behalf of the International Criminal Tribunal for the Former Yugoslavia ("ICTY")).  The fact that the government already had an arrest warrant based on a complaint, does not preclude the government from conducting further investigation, including questioning of the defendant, for possible presentation to a grand jury.  (This latter fact distinguishes this case from, for example, United States v. Doss, 563 F.2d 265 (6th Cir. 1977), wherein a defendant who had already been secretly indicted by the grand jury had been subpoenaed to testify to the same grand jury about the subject matter of the indictments.)

Fourth, see, also, United States v. McKenna, 327 F.3d 830, 837-838 (9th Cir. 2003) (without recognizing the doctrine, holding that in any event, it only applies to the use by the government of its investigatory powers to question a witness before the grand jury, and not to other situations).

16

Conclusion

The ICE and FBI agents used a ruse to bring the defendant to the ICE offices.  They did not use any compulsory process and they did not use any court proceedings.  Once he was there, the agents told the defendant he could refuse to answer questions. Rather than tell the truth, at first, the defendant told a lie (about his previous military service).  The statements he made can be the basis for a prosecution for false statements and other statements can be used to prosecute him for other offenses.  His motions should be denied.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                         By:  /s/ Jeffrey Auerhahn
                              Jeffrey Auerhahn and
                              Kimberly P. West
                              Assistant U.S. Attorneys

                    CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


                               /s/ Jeffrey Auerhahn
                              Jeffrey Auerhahn
                              Assistant U.S. Attorney

Date: March 17, 2006