**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 04-CR-10298-DPW |
| | ) | |
| v. | ) | |
| | ) | |
| MARKO BOSKIC | ) | |
| _____ | ) | |

**DEFENDANT MARKO BOSKIC'S TRIAL BRIEF**

**Introduction**

The defendant and the government have sharply divergent views concerning the trial of this case. The defendant seeks a trial where the question of the truth of his statements is the central issue before the jury. As such, in his view, the major questions for the jury to consider will include such issues as whether the defendant willfully and knowingly intended to make a false statement, whether the answers he gave are literally true, and whether the government has negated all possible interpretations of the questions that would render his answers truthful.

The government, on the other hand, is proposing to try this case as if defendant were on trial for war crimes and murder. The government is proposing to introduce the testimony of two survivors of Branjevo Farm, despite the fact that they are unable to identify defendant, and despite the fact that their testimony includes numerous horrifying incidents that occurred at locations and times at which defendant was not present. The government proposes to introduce the testimony of two historians to testify to years of conflict in the Balkans, to detail a series of atrocities during the summer of 1995, to describe the history of "ethnic cleansing," and to testify to the alleged destruction of the Muslim culture. Neither expert has anything to say about

defendant.  Indeed, defendant was either not born, not present, or not aware of most of the events in their proffered testimony.  Their testimony, however, will be horrifying.  The government proposes to display photographs of bodies being buried, dug up, and re-buried despite its lack of evidence linking defendant to any of these events.  The government proposes to introduce testimony that Muslim men and boys were rounded up by "Serbs," separated from their families, transported to various locations, and shot at by Serbians, all before the executions at Branjevo Farm.  The government has no proof that defendant took part in any of these activities.  The government seeks to introduce a videotape of Serbian General Mladic addressing 2,000 Muslim prisoners on July 13, 1995, several days prior to their execution.  While the videotape is chilling and horrifying, it has no relevance to defendant, who was not present for Mladic's performance.

The government has Marko Boksic's August 24, 2004, statement describing his involvement in the events at Branjevo Farm.  It has a video-tape showing him solemnly standing with other members of the 10th Sabotage Unit on October 14, 1996.  The government has no other evidence concerning Mr. Boskic and, as set forth in defendant's numerous motions in limine, it should not be allowed to introduce evidence of war crimes and murder committed by other persons in its effort to get Mr. Boskic convicted of making false statements.

I.    **Trial Motions Filed By Defendant**

    A.  **Jury Motions**

    1.  Defendant's Motion for a Juror Questionnaire, a Preliminary Instruction to Jurors, Individual Voir Dire, and Voir Dire Questions - Attached to this motion are a Proposed Juror Questionnaire, a Proposed Preliminary Instruction, and Proposed Voir Dire Questions.

    2.  Defendant's Request for Jury Instructions - Defendant's Request for Jury Instructions

will not be completed until tomorrow (June 13, 2006) and defendant requests leave to file on that

date.

### B.  Motions in Limine

Defendant has filed a series of motions in limine to exclude or limit the government's use

of evidence of war crimes, murder, torture, "ethnic cleansing," the destruction of the Muslim

culture, etc.  Those motions are:

1.  Motion in Limine to Exclude Survivor Testimony.

2.  Motion in Limine to Exclude Expert Testimony.

   Memoranda of Law in Support of Motion to Exclude Expert Testimony.

3.  Motion in Limine to Exclude Video Tape of "Awards Ceremony."

4.  Motion in Limine to Exclude Francis Monin's Habit and Practice Testimony.

5.  Motion in Limine to Exclude Testimony of Defense Department Employee Eric Benn

   and the Geospatial Photographs the Government Will Proffer Through Him.

6.  Motion in Limine to Limit the Testimony of Alistar Graham.

7.  Motion in Limine to Exclude Video of General Mladic.

8.  Motion in Limine to Preclude Use of the Term "Ethnic Cleansing."

9.  Motion in Limine to Exclude the Photographs Taken in 2005 by FBI Agent David

   Habich.

### C.  Other Motions

1.  Defendant's Motion for an Offer of Proof or Voir Dire Concerning the Preparation of

INS Form I-485: Application to Register Permanent Residence Status.

**II.  Legal Issues That Will Arise During the Trial of this Case**

    **A.  The Government's Burden on Counts I and II of the Indictment**

        **1.  The Bronston Rule – The Literal Truth Defense - is Applicable to Counts
One and Two of this Indictment**

The Supreme Court has "set exacting standards for maintaining a perjury prosecution."[1]

United States v. Richardson, 421 F.3d 17, 32 (1st Cir. 2005) citing Bronston v. United States, 409

U.S. 352 (1973).  The Court in Bronston held that a literally true statement is legally insufficient

to support a conviction even if the statement was intended to be misleading.  United States v.

Richardson, 421 F.3d at 33 ("Bronston. . . requires dismissal of an indictment 'where. . . the

government hinges its charge on the false implications of a statement that is not alleged to be

false in itself.'" quoting United States v. Finucan, 708 F.2d 838, 848 [1st Cir. 1983]).  "'A jury

should not be permitted to engage in conjecture whether an unresponsive answer, true and

complete on its face, was intended to mislead or divert the examiner.'"  Id. at 33 quoting

Bronston v. United States, 409 U.S. at 359.

Application of the Bronston rule to Counts One and Two of the indictment in this case

will necessitate granting defendant's Rule 29 Motion for Judgment of Acquittal.  Count One

concerns the defendant's response to Question 14 on Form I-590 which states "Military

Service."  The defendant listed his military service in the Yugoslav National Army.  The

government's allegation is that the defendant's statement was false because he did not list any

---

[1]  The Bronston rule applies equally to false statement prosecutions under 18 U.S.C.
§1546 and 18 U.S.C. §1001, the statutes at issue in the present case. United States v. Attick, 649
F.2d 61, 63 (1st Cir. 1981) (holding Bronston applicable to prosecutions under §1001); United
States v. Manapat, 928 F.2d 1097, 1099 (11th Cir. 1991) (holding Bronston applicable to
prosecutions under §1001); United States v. Diogo, 320 F.2d 898, 907 (2nd Cir. 1963) (holding
Bronston applicable to prosecutions under §1546).

military service beyond the Yugoslav National Army even though he allegedly was a part of the

Army of the Republic of Srpska.  However, the fact, undisputed by the government, that the

defendant's response was literally true, places it squarely within the purview of the Bronston

rule.  As set out above, the rule requires dismissal "'where. . . the government hinges its charge

on the false implications of a statement that is not alleged to be false in itself.'" United States v.

Richardson, 421 F.3d at 33.  This is precisely what the government has done in the present case.

The government does not dispute that the defendant served in the Yugoslav National Army.

Rather, it maintains that the "false implication" that the defendant only served in the Yugoslav

National Army, stemming from his true, but allegedly limited disclosure, provides a legally

sufficient basis for the present prosecution.  Bronston clearly holds that it does not.

Count Two of the indictment must suffer the same fate for the same reason.  Count Two

concerns Part 3-C of Form I-485.  That part sought a response from the defendant to the

following:

> List your present and past membership in or affiliation with every political
> organization, association, fund, foundation, party, club, society or similar group in
> the United States or in other places since your 16th birthday. Include any foreign
> military service in this part.  If none, write "none."  Include the name(s) of the
> organization(s), location(s), dates of membership from and to, and the nature of
> the organization(s).  If additional space is needed, use a separate piece of paper.

The defendant responded "1983-1985 Yugoslavian military."  Again, the government does not

dispute the literal truth of this response, namely, that the defendant served in the Yugoslavian

military.  Rather the theory of its prosecution is that the defendant failed to list his alleged

service in the Army of the Republic of Srpska.  But, even if the government is correct that

service in that para-military service was "military service," under Bronston the defendant may

not be convicted for making a literally true, but misleading statement.

### 2. The Fundamental Ambiguity Defense is Applicable to Count One of the Indictment

A distinct ground that will require a Judgment of Acquittal of Count One is the

"fundamental ambiguity" of Question 14 on Form I-590.  "A question that is truly ambiguous or

which affirmatively misleads the testifier can never provide a basis for a finding of perjury, as it

could never be said that one intended to answer such a question untruthfully."  United States v.

Richardson, 421 F.3d 17, 33 (1st Cir. 2005) quoting United States v. DeZarn, 157 F.3d 1042,

1048 (6th Cir. 1998) see also United States v. Manapat, 928 F.2d 1097, 1101 (11th Cir.

1991)("When the question that led to the allegedly false response is fundamentally ambiguous,

we cannot allow juries to criminally convict a defendant based on their guess as to what the

defendant was thinking at the time the response was made."); United States v. Ryan, 828 F.2d

1010 (3rd Cir. 1987)(abrogated on other grounds).

United States v. Ryan addressed the defendant's response to a virtually identical question

on a credit card application to that underlying Count One and held that its ambiguity precluded it

from supporting a conviction for false statements.  The question stated "Previous Address (Last

5 Years)."  The court reasoned that:

> "the question has at least three possible meanings.  It could be
> viewed as asking the applicant to supply
> 1) any previous address that the applicant has had within the last
> five years,
> 2) the applicant's most recent previous address if and only if the
> applicant lived at that address within the last five years, or
> 3) all previous addresses that the applicant has had within the last
> five years.

Id. at 1016.

The court held that "because of the inherent ambiguity of the 'previous address' question, the jury should not have been allowed to consider Ryan's answer to the question as a possible basis for a conviction under count two." Id. at 1017.

The question "Military Service" is equally ambiguous. Just like "Previous Address" Military Service is amenable to at least three meanings: (1) any military service; (2) present military service; or (3) all military service. As in Ryan the jury should not be allowed to consider the defendant's answer to an inherently ambiguous question as a possible basis for a conviction.

### B. The Government's Burden on Counts Three and Four

#### 1. Fundamental Ambiguity

The questions underlying Counts Three and Four of the indictment are also "fundamentally ambiguous." Because fundamentally ambiguous questions are amenable to different and equally reasonable interpretations, a jury may not guess at which meaning the defendant had in his mind at the time he answered the question. As will be explained, one of the meanings of the questions entails that the defendant harbored discriminatory intent. Because this meaning, which entails such intent, is a reasonable meaning, and the jury is legally foreclosed from guessing that the defendant did not understand the questions in this way, it falls to the government to prove that the defendant possessed such intent in order to prove that his answer to the question was false. Accordingly, if the government is not able to meet this burden at the close of its case, a Rule 29 Judgment of Acquittal must be entered on behalf of the defendant.

Fundamentally ambiguous statements are those "with a meaning about which men of ordinary intellect could [not] agree. . ." United States v. Richardson, 421 F.3d 17, 34 (1st Cir.

2005) quoting <u>United States v. Lighte</u>, 782 F.2d 367, 375. "When the question that led to the

allegedly false response is fundamentally ambiguous, we cannot allow juries to criminally

convict a defendant based on their guess as to what the defendant was thinking at the time the

response was made." <u>U.S. v. Manapat</u>, 928 F.2d 1097, 1101 (11th Cir. 1991) .

      The statements underlying Counts Three and Four are decidedly of this type. As set out

in the indictment the statements are as follows:

Count Three:

> "[I] have never ordered, assisted or otherwise participated in the
> persecution of any person because of race, religion and political
> opinion. . ."

Count Four:

> "[I] had never ordered, incited, assisted or otherwise participated
> in the killing of any person because of race, religion, nationality,
> ethnic origin and political opinion. . ."

The term "because of" renders these statements amenable to at least two reasonable

interpretations: (1) the discriminatory intent of the subject of the statement is implicated, i.e., the

subject of the statement participated in a killing because of his own discriminatory intent; and (2)

discriminatory intent is not implicated, i.e., the subject of the statement participated in a killing

where others were persecuting based on discriminatory intent.

     "Because of" statements engender this ambiguity. The Supreme Court addressed an

identical quandary in <u>Smith v. City of Jackson , Mississippi</u>, 544 U.S. 228 (2005). There the

Court addressed whether a disparate impact case—one that looks to the discriminatory effects of

an employment decision instead of the discriminatory intent of the employer—was cognizable

under the Age Discrimination in Employment Act (ADEA).  One of the key issues for the Court

was the proper interpretation of "because of" in 29 U.S.C. 623(a)(2), which makes it unlawful

for an employer

> to limit, segregate, or classify his employees in any way which
> would deprive or tend to deprive any individual of employment
> opportunities or otherwise adversely affect his status as an
> employee, *because of* such individual's age. . . (Emphasis added).

The plurality concluded that the language did not require discriminatory intent; the concurrence

concluded that it did.  The plurality reasoned that "the text focuses on the *effects* of the action on

the employee rather than the motivation for the action of the employer." Id. at 1542.

Disagreeing , Justice O'Connor concluded that the text "plainly requires discriminatory intent,

for to take an action against an individual '*because of* such individual's age' is to do so 'by

reason of' or 'on account of' her age." Id. at 1549. quoting Webster's Third New International

Dictionary 194 (1961).  According to O'Connor, the plurality interpreted the term "because of. . .

age" to refer "to the *cause of the adverse effect* rather than the *motive for the employer's action*"

and she concluded that "this reading is unpersuasive." Id. at 1550.  According to the plurality,

O'Connor's "textual reading is not persuasive."  Id. at note 6.

Thus, four members of the Court believe that the term "because of"  does not require

discriminatory intent; three members do.  Justice Scalia, undecided, would defer to the EEOC to

determine the answer.  There can be little doubt that the statements underlying Counts Three and

Four, which involve the identical issue, are fundamentally ambiguous.

It is well settled that "it is incumbent on the government to negative any reasonable

interpretation that would make the defendant's statement factually correct."  United States v.

Diogo, 320 F.2d 898, 907 (2nd Cir. 1963).  Because the jury in a false statements case cannot be

asked to guess at which meaning of a fundamentally ambiguous statement the defendant had on

his mind when he answered the question underlying the indictment, the defendant may have

reasonably understood the question to ask whether he had ever killed anyone based on his own

discriminatory intent.  He may only be convicted in this case if the government is able to prove

beyond a reasonable doubt that whatever the defendant did he did it with discriminatory intent.

Accordingly, if the government is not able to adduce sufficient evidence of

discriminatory intent on the part of the defendant, a rule 29 Judgment of Acquittal must be

directed at the close of the government's case.

### 2. Arguably Ambiguous

If this Court rejects defendant's position that the statements are fundamentally

ambiguous, and concludes they are merely "arguably ambiguous," the government must prove

beyond a reasonable doubt the precise meaning the defendant understood at the time he

answered the question and that his answer was false.  United States v. Diogo, 320 F.2d 898, 905

(2nd Cir. 1963) ("For a jury to conclude that perjury has been committed, in fact, it must

determine what the words meant to the defendant at the time he offered them as his testimony,

and then conclude that the defendant did not at that time believe in the truth of such testimony

according to the meaning he ascribed to the words and phrases he used" quoting United States v.

Lattimore, 127 F.Supp 405, 408-09 [D.C.D.C. 1955])  United States v. Manapat, 928 F.2d 1097,

1099 (11th Cir. 1991)(". . .when a question is 'arguably ambiguous,' 'the defendant's

understanding of the question is a matter for the jury to decide.'") In circumstances of arguable

ambiguity it remains "incumbent on the government to negative any reasonable interpretation

that would make the defendant's statement factually correct." United States v. Diogo, 320 F.2d

898, 907 (2nd Cir. 1963).

**D.   The Government May Not Use Defendant's Suppression Hearing Testimony**

In United States v. Salvucci, 448 U.S. 83 (1980), the Court noted that it had not decided

whether the rule announced in Simmons v. United States, 390 U.S. 377 (1968) -- namely, that a

defendant's incriminating statements made at a suppression hearing may not be used as part of

the government's case-in-chief -- also "precludes the use of a defendant's testimony at a

suppression hearing to impeach his testimony at trial." United States v. Salvucci, 448 U.S. at 94;

Cf. United States v. Salemme, 985 F.Supp 197, 203 (1st Cir. 1997) ("It appears, however, that the

government would be permitted to use a defendant's statements for impeachment purposes if he

testifies at trial").  However, the holding in New Jersey v. Portash, 440 U.S. 450 (1979), that a

defendant may not be impeached with immunized testimony given before a grand jury at least

prohibits impeachment with testimony that was  *involuntarily* given at a suppression hearing.

At the suppression hearing in this case the defendant was compelled to provide

incriminating statements.[2]  Early in the government's cross-examination defense counsel

objected to the government probing into the merits of the case beyond the scope of the

suppression hearing.  (Tr. Pg. 25).  Despite the Court's admonition to the government the

prosecutor returned to the merits of the case and asked a series of questions that went directly to

the merits of the criminal charges.  These questions ran afoul of the Court's earlier directive and

---

[2] Q: And during the questioning of you by Agent Hughes and Agent Carroll, you
admitted that you lied on those documents, didn't you? A: Yes. Q: Okay. You admitted that you
lied in omitting your military service; isn't that true? A: Yes. Q: You admitted that you lied in
omitting previous arrests overseas; isn't that true? A: Yes. (Tr. Pg. 33-34).

Federal Rule of Evidence 104(d) which provides that by testifying upon a preliminary matter, an

accused does not subject himself to cross-examination as to other issues in the case.

In considering whether immunized testimony could be used for impeachment purposes in

New Jersey v. Portash, the Court considered the government's arguments based on the holding in

Harris v. New York, 401 U.S. 222 (1971), that incriminating statements made in violation of

Miranda may be used against a defendant for impeachment purposes.  The Court rejected those

arguments recognizing the "crucial distinction between those cases and this one.  In Harris and

Hass the Court expressly noted that the defendant made 'no claim that the statements made to the

police were coerced or involuntary. That recognition was central to the decisions in those

cases.'" New Jersey v. Portash, 440 U.S. at 458 (internal citations omitted).  With respect to

involuntary statements the Court thus held that:

> The Fifth and the Fourteenth Amendments provide that no person
> 'shall be *compelled* in any criminal case to be a witness against
> himself.'  As we reaffirmed last Term, a defendant's compelled
> statements, as opposed to statements taken in violation of *Miranda,*
> may not be put to any testimonial use whatever against him in a
> criminal trial. 'But *any* criminal trial use against a defendant of his
> *involuntary* statement is a denial of due process of law."

Id. at 459.

The statements at issue in the present case were involuntary and therefore "may not be

put to any testimonial use whatever against him in a criminal trial."

**III.  Summary of Expert Opinion Testimony**

A.  Susan Berk-Siligson is a professor at Vanderbilt University in Tennessee.  She is an

expert in Linguistics, translation, interpretation and court room  interpretation.  She has written

extensively on courtroom interpretation and the role of linguistics in court interpretation and

court proceedings.  Prof. Berk-Seligson will be testifying to the inherent inaccuracies in translation and interpretation; the necessity of qualified translators in legal translation and the increased chance of error with unqualified or under qualified translators and the linguistic ambiguity and complexity of certain questions on the I-590 and I-485 form.

B.  Milan Jelic is a Serbo-Croatian interpreter.  He will testify as to the inaccuracies of certain translations, the ambiguity of sentences in Serbo-Croatian, Serbian or Croatian and the complex ways of interpreting certain phrases in Serbo-Croatian.  Mr. Jelic will be used to establish the meaning of certain phrases on the I-590 or I-485, the varying possibilities of interpretation and meaning for those phrases.

C.  Nancy McCann is a handwriting expert.  She will testify that handwritten answers to the questions on the I-485 Application for Refugee Status are not written in defendant's handwriting.

Defense counsel will supply the experts' CVs at the pretrial conference on June 15, 2006.

Respectfully submitted,

/s/ Patricia Garin
Max D. Stern
BBO NO. 479560
Patricia Garin
BBO No. 544770
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800

Dated: June 12, 2006

G:\SSWG\BOSKIC\Trial Docs\trial brief2.wpd