**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
UNITED STATES OF AMERICA      )
                                        )        Case No. 04-CR-10298-DPW
                                        )
            v.                          )
                                        )
       MARKO BOSKIC                )
_____)


**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE**
**TO EXCLUDE EXPERT TESTIMONY**

**Statement of the Case**

This is a criminal case in which defendant is charged with

five counts of false statements, allegedly concerning his service

in the Army of the Republic of Srpska.  The government and the

defendant have entered into a stipulation concerning the

discovery and processing of mass burial sites in Eastern Bosnia,

including particularly a mass burial site at the Branjevo

Military Farm.

Defendant has offered to stipulate to the existence and

structure of the Socialist Federal Republic of Yugoslavia from

1946 until 1992.  Defendant has offered to stipulate to the

breakup of Yugoslavia and the subsequent outbreak of war in

Yugoslavia between the Bosnian Serbs, Croats, and Muslims as well

as the formation of armies set up by each group and their efforts

to expand their respective territories from 1992 through 1995.

The defendant has offered to stipulate that on July 11, 1995, the

Serbs launched an offensive against Muslim enclaves in Eastern Bosnia, including the enclave at Srebrenica.  Defendant has further offered to stipulate that on July 16, 1995, hundreds of Muslim men and boys were massacred at the Branjevo Military Farm, and that these killings were committed by the Tenth Sabotage Division, among others.

Proffered Expert Testimony

The government has set forth its intention to call two historians, Richard J. Butler and Andras Riedlmayer, as expert witnesses concerning "the background of the massacres." According to the government, these experts will testify entirely regarding uncontested factual matters.  These include the existence and structure of the Federal Republic of Yugoslavia, the bitter ethnic strife existing the area after World War II, the use of the Peoples Army of Yugoslavia in keeping such strife at bay (at least until Tito's death in 1980).  The experts will testify as to the undisputed origins of the nationalist conflicts that consumed Yugoslavia in the early 1990s.  The experts will also testify as to the formation of ethnic military groups or armies in Bosnia, facts utterly uncontested by defendant.

The heart of the expert testimony will be that the leadership of the Republic of Srpska decided, in Spring of 1995, to attack the Muslim enclaves existing in Bosnia, including Srebrenica.  The experts will testify as to the capture of

Srebrenica, and the subsequent role of the 10th Sabotage

Detachment in the massacre of hundreds of Muslim men and boys on

July 16, 1995 at the Branjevo Military Farm.  Finally, the

experts will testify that the massacres were part of an effort to

"wipe out the Muslim population, as well as destroy evidence of

their cultural heritage."  See Government's Trial Brief, at 8-11.

<strong>Argument</strong>

**I.    Admission of the Proffered Expert Testimony Would
       <u>Violate Fed.R.Evid. 702.</u>**

Admission of the proffered expert testimony would violate

Fed.R.Evid. 702 because it will not assist the trier of fact in

understanding any of the evidence or determining a fact at issue.

Fed.R.Evid. 702 permits the admission of expert testimony

concerning "scientific, technical or specialized knowledge" that

"will assist the trier of fact to understand the evidence or to

determine a fact at issue."

Here, the admission of the proffered testimony would neither

assist the trier of fact in understanding any of the evidence or

determine any fact at issue, particularly since none of the facts

the experts would testify to are contested.  Indeed, it is

notable that the government, in its Trial Brief, recites Rule 702

and asserts that the expert testimony at issue here would comply

with it, but does not state what evidence the testimony would

help the jury understand nor what fact it could assist the jury

in determining.

The government rather blandly asserts that "[h]istorians have routinely been used as experts pursuant to Rule 702 in cases involving denaturalization proceedings brought against those who participated or assisted in the Nazi atrocities during World War II."  See Government's Trial Brief, at 12.  While this is true, it is revealing to examine some of those cases.

United States v. Dailide, 227 F.3d 385 (1st Cir. 2000) concerned the denaturalization of a naturalized citizen who had been a member of the Saugumus, the Lithuanian Secret Police, during World War II.  There were two issues of fact at the summary judgment stage.  First, whether the Saugumus had persecuted civil populations and second, whether the defendant had assisted the Saugumus in such persecution.  The government introduced a detailed expert affidavit as to the fate of Jews in Lithuania during World War II, including the role of the Saugumus in the arrest, deportation, and killings of the Jewish population.  There was no challenge by the defendant as to the admission of the testimony pursuant to Rule 702, except that defendant claimed such evidence was inadmissible because of a lack of "personal knowledge" on the part of the expert.  Id. at 391-92.  There would be little question that the historical evidence would be helpful to the trier of fact in such a case in determining whether the Saugumus had persecuted civil populations.

4

United States v. Lileikis, 929 F.Supp. 31 (D. Mass. 1996) was a denaturalization complaint against the head of the Saugumas during the Nazi occupation of Lithuania.  As the court recognized, "The precise mechanisms set up by the Nazis to achieve a 'Final Solution' , , , and the role played by local security forces such as the Saugumas are . . . central to the dispute before the court. . . ." Id. at 32.  Again, the defendant did not challenge the admission of expert testimony on Rule 702 grounds, but asserted that the government's chosen expert was not a "credible" scholar and expert.  Id. at 38.

United States v. Schiffer, 831 F.Supp. 1166 (E.D. Pa. 1993) was another denaturalization proceeding in which there was no challenge to the admission of expert testimony.  The basis for the admission of that testimony is apparent in that the most important issues before the court were whether defendant, a member of the Waffen-SS and concentration camp guard during World War II was involuntarily conscripted into the Waffen-SS and whether he was aware of the atrocities committed at the concentration camp where he was stationed.  Thus, there was expert testimony admitted as to SS recruiting methods in Romania and the consequences to those who did not volunteer, the general background of concentration camp guards, the structure of the camp where defendant was stationed, the extent and details of the atrocities which took place there, and the specific duties of

tower guards (which defendant claimed to have been).  The relevance of the testimony to the contested issues is immediately obvious.

The expert testimony the government wishes to introduce here, by contrast, is not "helpful" to any decision which must be made by the factfinder, nor will it assist the factfinder in understanding the evidence presented.  Defendant here does not dispute the historical facts the experts would testify to, including whether there was a massacre of Muslim civilians on July 16, 1995 at Branjevo Military Farm, or whether the 10th Sabotage Division played a primary role in that massacre.  The additional facts the proffered testimony would offer are not disputed and are not relevant to any fact which is at issue.  The experts have nothing to say about defendant.  Their testimony adds nothing to the analysis of whether defendant intentionally made false statements in filling out immigration forms.

Thus, because the proffered expert testimony would neither assist the jury in determining any fact at issue, and because that testimony would not be helpful to the jury in understanding the evidence, the expert testimony should be excluded under Rule 702.

**II. The Proferred Expert Testimony is More Prejudicial Than Probative and Should be Excluded Pursuant to <u>Fed.R.Evid. 403.</u>**

The probative value of the proffered evidence is "substantially outweighed by the danger of unfair prejudice" and it should be excluded pursuant to Fed.R.Evid. 403.  The government seeks to introduce lengthy testimony as to the ferocious armed conflict in Bosnia, as well as voluminous testimony regarding the structure of the Army of the Republic of Srpska and the duties of those with ranks well above that alleged to have been held by defendant.  The slight - if any - probative value of such evidence is far outweighed by the danger of unfair prejudice.  See <u>United States v. Pineda-Torres</u>, 287 F.3d 860 (9th Cir. 2002)(probative value of expert testimony concerning structure of international drug-trafficking organization substantially outweighed by unfair prejudice in trial for possession with intent to distribute marijuana, where sole issue at trial was whether defendant knew of marijuana in vehicle he was driving and implication of expert testimony was that defendant was member of drug-trafficking organization and had such knowledge).

## Conclusion

For the reasons set forth above, Defendant's Motion in Limine to Exclude Expert Testimony should be granted.

Respectfully submitted,

/s/ Patricia Garin
Max D. Stern
BBO NO. 479560
Patricia Garin
BBO No. 544770
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800

Dated: June 12, 2006

G:\SSWG\BOSKIC\Trial Docs\memo in support of exclusion of expert testimony.wpd