UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | Case No. 04-CR-10298-DPW |
| v. | ) ) ) |  |
| MARKO BOSKIC | ) ) |  |

**DEFENDANT MARKO BOSKIC'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR ENTRY OF JUDGMENT OF ACQUITTAL ON COUNTS ONE AND TWO**

### Introduction

Defendant submits this memorandum of law in support of his motion pursuant to Fed.R.Crim.P. 29©), to enter judgments of acquittal on Counts One and Two of the indictment. The evidence presented at trial was insufficient as a matter of law to sustain a conviction on these counts.

### Argument

### I.  A JUDGMENT OF ACQUITTAL SHOULD BE ENTERED ON COUNT I

   A.   **Bronston v. United States Prohibits a False Statement Conviction Based on a Literally True Answer**

Count I of the indictment alleges a violation of 18 U.S.C. §1546(a) stating that the defendant:

> . . .did knowingly make under oath, or did knowingly subscribe as true under penalty of perjury under 28 U.S.C. §1746, a false statement with respect to a material fact in an application required by the immigration laws and regulations prescribed thereunder, to wit, Form I-590, Registration for Classification as a Refugee, that is, that Boskic had only served in the Yugoslav National Army and no other, which said statement the defendant then and there knew was false, in that he had, in fact, served in the Army of the Republic Srpska.

The indictment charges that the defendant's false statement was that he "had only served in the Yugoslav National Army and no other."  The evidence adduced at trial showed that question 14 of Form I-590 (Exhibit 11a) stated "Military Service" (as translated from the Serbo-Croatian form filled out by the defendant (Exhibit 11aa)).  Underneath "Military Service" were two lines where military service could be listed.  The defendant wrote "BivŇ SFR Jugoslavija" (Exhibit 11aa), which translated means "SFR Yugoslavia" or Yugoslav National Army.  The defendant did not state that he had "no other" military service.  Indeed, "no other" military service is nothing more than an arguable implication from the answer given by the defendant.  But, the false implication of his partial disclosure of military service cannot sustain a conviction for false statements under Bronston v. United States, 409 U.S. 352 (1973).

The Supreme Court's opinion in Bronston, and its First Circuit progeny, hold that the government may not "hinge its charge on the false implications of a statement that is not alleged to be false in itself."  United States v. Richardson, 421 F.3d 17, 33 (1st Cir. 2005) quoting United States v. Finucan, 708 F.2d 838, 848 (1st Cir. 1983).  The defendant's translated statement on Form I-590 was "SFR Yugoslavia" or Yugoslav National Army.  This statement was true.  Had there been any evidence at trial that the defendant had stated that he had served in the Yugoslav National Army and no other, a reasonable jury could have concluded that his statement was false.  But there was no such evidence.  The government thus hinges its charge not on any evidence of an affirmative false statement, but on the false implications of the defendant's true statement regarding his military service.  Predicating a false statement conviction on such an implication alone is precisely what the Supreme Court and First Circuit have consistently held is not allowed.

### B.  The "Military Service" Question on Form I-590 is Fundamentally Ambiguous

The "Military Service" section of Form I-590 is fundamentally ambiguous and cannot sustain the defendant's conviction.

"When the question that led to the allegedly false response is fundamentally ambiguous, we cannot allow juries to criminally convict a defendant based on their guess as to what the defendant was thinking at the time the response was made."  United States v. Manapat, 928 F.2d 1097, 1101 (11th Cir. 1991); see also United States v. Ryan, 828 F.2d 1010 (3rd Cir. 1987)(abrogated on other grounds).

In United States v. Ryan, the court addressed a defendant's response to a question on a credit card application that was virtually identical in form to the question on the I-590 Form that underlies Count One.  The Ryan court held that the question's ambiguity precluded it from supporting a conviction for false statements.  The question stated "Previous Address (Last 5 Years)."  The court reasoned that:

> the question has at least three possible meanings.  It could be viewed as asking the applicant to supply
>
> 1) any previous address that the applicant has had within the last five years,
> 2) the applicant's most recent previous address if and only if the applicant lived at that address within the last five years, or
> 3) all previous addresses that the applicant has had within the last five years.

Id. at 1016.  The court held that "because of the inherent ambiguity of the 'previous address' question, the jury should not have been allowed to consider Ryan's answer to the question as a possible basis for a conviction under count two."  Id. at 1017.

The question "Military Service" is equally ambiguous.  Just like "Previous Address",

3

Military Service is amenable to at least three meanings: (1) any military service; (2) present military service; or (3) all military service. As in <u>Ryan</u> the jury should not be allowed to consider the defendant's answer to an inherently ambiguous question as a possible basis for a conviction.

    II.    **<u>A JUDGMENT OF ACQUITTAL SHOULD BE ENTERED ON COUNT II</u>**

        A.    **It Cannot Be Determined From the Evidence What Question Was Asked the Defendant and Therefore <u>It Cannot Be Determined Whether His Answer Was False</u>**

The same principle that precludes the answers to fundamentally ambiguous questions from supporting a false statements conviction also necessitates a judgment of acquittal on Count II. The state of the evidence was such that the jury was impermissibly required to guess at what question the defendant was asked.

Answers to fundamentally ambiguous questions cannot support a conviction because the jury cannot be asked to "guess as to what the defendant was thinking at the time the response was made." <u>United States v. Manapat</u>, 928 F.2d 1097, 1101 (11th Cir. 1991). "While a jury may guess correctly as to a defendant's understanding of a question, 'it is not entitled to guess at all.'" <u>United States v. Martellano</u>, 675 F.2d 940, 946 (7th Cir. 1982). "Especially in perjury cases, defendants may not be assumed into the penitentiary." <u>United States v. Glantz</u>, 847 F.2d 1, 6 (1st Cir. 1988) quoting <u>United States v. Brumley</u>, 560 F.2d 1268, 1277 (5th Cir. 1977); see <u>United States v. Poutre</u>, 646 F.2d 685, 688 (1st Cir. 1980) (noting the facts provide a "telling illustration of the need in false statement prosecutions for reliable evidence of precisely what was said.")

Count II concerned the answer defendant gave to a question regarding his military service on Form I-485. The evidence with respect to that count was supplied by Arti Gehani, a volunteer at the International Rescue Commission (IRC) at the time the form was filled out. Gehani

testified that she recognized the handwriting on the I-485 to be her own. She filled out the defendant's form, although she has no specific memory of doing so. She further testified that if she filled out the form she would also be asking the questions audibly for the client.

Gehani testified that she did not read the questions to the applicant verbatim from the form. She would paraphrase the questions. (Tr. P.111, L. 8)[1] She further testified that the manner in which she would paraphrase questions evolved over the time she volunteered at the IRC. At the time the defendant arrived at the IRC, Gehani had been there no more than a couple of months. She testified on cross that "I cannot tell you exactly what I said five years ago when I was filling out one client's form. No." (Tr. P.122, L. 12) With respect to her paraphrasing of questions she stated, "I mean, I never use the same words. It's hard to say. It's been five years, so I don't know." (Tr. P. 122, L. 16) Gehani did testify to her practice once it was developed. She stated that she "would ask clients if they had ever been in the military or in any political group either here or in another country." (Tr. P.111, L. 22; P.122, L. 25)

Thus, the evidence leaves undetermined what the defendant was asked with regard to his military service at the time Gehani filled out the I-485 Form on his behalf. Such a gap in the evidence cannot support the conviction in this case. At best the jury could speculate or guess as to what the defendant was asked, which is precisely what a jury may not do.

In United States v. Poutre, 646 F.2d 685 (1st Cir. 1980), a case presenting similar circumstances, the Court reversed the defendant's false statement conviction based on insufficiency of the evidence because there was no clear record indicating what the defendant said to the IRS. The evidence comprised a transcript of part of the defendant's interview, a memo

---

[1] Partial Transcript attached at Tab A.

created by the IRS agent following the interview, and the testimony of the interviewing agent. The three allegedly false statements underlying the indictment did not all appear in any one of the three sources. Although the jury had before it the three sources of evidence, the Court concluded that the "oral evidence [was] too fragile to support a guilty verdict." Id. at 688 citing United States v. Clifford, 426 F.Supp 696, 702-03 (EDNY 1976); United States v. Ehrlichman, 379 F.Supp 291, 292 (DDC 1974). The Court emphasized that "what is actually said by a defendant becomes a crucially important part of any [false statement] prosecution." Id. at 688.

The question that a defendant is asked is equally crucial. In that respect, the evidence in the present case goes beyond fragility. Arti Gehani explicitly testified that she does not know what she asked the defendant about his military service. The jury in convicting the defendant was thus required to assume that the question she asked rendered his answer to it false. The body of law that forbids jurors from guessing how a defendant understood a fundamentally ambiguous question applies with equal force when it is impossible to ascertain, as it is in the present case, what question was asked. If a jury is not allowed to guess as to which of two meanings the defendant had on his mind at the time he was asked a question, *a fortiori* the jury cannot be allowed to guess what question the defendant was asked. The evidence underlying Count II is therefore insufficient to sustain the defendant's conviction.

### B.     Even If The Jury May Guess at What Question Was Asked, The Defendant's Response Was Literally True

Even if the Court determines that the evidence was sufficient for the jury to conclude that the question asked by Arti Gehani concerning military service was the question she asked her clients after having developed her interviewing habits and practices, the defendant's conviction still cannot stand. The defendant's response was literally true and thus under Bronston v. United

States, cannot sustain the conviction.

Gehani testified that once her practice of paraphrasing developed she would ask the following question: "had [they] ever been in the military or in any political group either here or in another country." (Tr. P.111, L. 22; P.122, L. 25)  The defendant answered this question "Yugoslav National Army."  As pointed out with respect to Count I, this answer is indisputably literally true.  Moreover, it is unresponsive -- the question calls for a yes or no response -- thus placing the answer squarely within the Bronston formulation.

Respectfully submitted,

/s/ Patricia Garin
Max D. Stern
BBO No. 479560
Patricia Garin
BBO. No 554770
Jeffrey Wiesner
BBO. No. 655814
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800

Dated: July 19, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on 7/19/06.

/s/ Patricia Garin