UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>) <br>)<br>v.               )<br>)<br>MARKO BOSKIC     )<br>_____) | Case No. 04-CR-10298-DPW |

**DEFENDANTS' MOTION TO STRIKE EVIDENCE RELIED ON BY THE
GOVERNMENT IN ITS SENTENCING MEMORANDUM
AND CONTINGENT MOTION FOR EVIDENTIARY HEARING**

Defendant, Marko Boskic, hereby moves this Court to strike the evidence attached to the Government's Sentencing Memorandum referred to in the portion entitled "I. Relevant Conduct and other Information " (pp.5-24). That information should be stricken for two reasons: First, the alleged conduct does not meet the definition of "relevant conduct" under the Sentencing Guidelines, § 1B1.3. Second, the information is nothing more than unreliable hearsay and cannot be used as a basis for an upward departure or sentence outside of the guidelines. In the event the Court is inclined to rely on the government's proffered evidence, the defendant requests a hearing to cross-examine the government's witnesses.

In support of this motion, defendant states:

**The Alleged Conduct is Not "Relevant Conduct" Under the Guidelines**

1. Relevant conduct consists of "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . .that occurred during the commission of the offense of conviction, in preparation for that offense, or in the

course of attempting to avoid detection or responsibility for that offense." Guideline §1B1.3 (a)(1)(A).

2. The offenses in this case occurred in February of 2000 and April of 2001 when defendant answered the same questions about his military history on two different immigration forms.

3. The alleged "relevant conduct" occurred in July of 1995 and surely was not committed in furtherance of or in preparation for the offenses committed more than five years later.

4. The first part of the "Relevant Conduct" section of the Government's Sentencing Memorandum is entitled "The Victims" and it recounts trial testimony and statements by the two Branjevo Farms' survivors who testified at trial. (Gov't Memo at 5-9.) Pursuant to the Guidelines, a "victim" is someone who suffered a monetary or physical loss or physical injury as a result of the offense of conviction. Guideline § 2B1.1, Commentary, Application Note 1. The Probation Department concluded there were no victims, under the Guidelines, for the offense of false statements on an immigration form.

5. Because the information on pages 5-24 of the Government's Sentencing Memorandum is not "Relevant Conduct' or "Victim" information, it should be stricken.

### The Information in the Government's Sentencing Memorandum is Unreliable Hearsay and Cannot Be Used as a Basis for an Upward Departure or a Sentence Outside of the Guidelines.

6. The government proposes to rely on the hearsay statements of Drazen Erdemovic, (pp. 9-16), Milorad Pelemis (pp.16-17), Zoran Obrenovic (pp.17-18), Boston Globe reporter Elizabeth Neuffer (pp.18-19), and several persons named in police reports concerning defendant

(pp.19-22), in support of its proposed sentence that is more than ten times the applicable Guideline range.

    7. Defendant denies the vast majority of the information on pp. 9-22 [1] of the Government's Sentencing Memorandum including, but not limited to, the following:

    a. Boskic did not demand payment for smuggling Serbs across the border into Serbia from Bosnia;

    b. Boskic did not "join the unit" of his own accord;

    c. Between October 1994 and July 1995, Boskic was not involved in five or six operations with the 10th Sabotage Detachment;

    d. Erdemovic's statement that he was the only one to protest "the assignment" is untrue;

    e. Boskic did not become drunk;

    f. Boskic did not "mistreat prisoners", beat them or shoot them in the legs and arms in order to wound them first;

    g. Erdemovic's statements concerning the number of persons killed and the number he killed are not accurate.

    h. Boskic never shot, crucified or burned a Muslim prisoner and he never told Erdemovic that he did;

    I. Boskic did not hold "a position of trust" in the 10th Sabotage Detachment;

    j. Boskic never told Erdermovic's wife that the Erdemovic "had betrayed them" or that he was going to kill Erdemovic, his wife and his family;

    k. Defendant challenges any estimate, provided by the government based on Pelemis' statements, of the total number of persons killed at Branjevo Farm, the number of persons Pelemis killed, and the number of persons he allegedly killed;

---

[1] With respect to the information on pp. 5-9 ("the Victims"), defendant denies being involved in any of the specific acts of torture they allege. The witnesses did not identify defendant as anyone they recognized when they testified at trial.

    l.      Milorad Pelemis's claim that he did not give the order to commit the killings at Branjevo Farm is not true;

    m.     Pelemis's statement that Boskic volunteered for work is untrue;

    n.      Boskic did not participate in twenty missions;

    o.      Boskic did not volunteer for the 10th Sabotage Detachment;

    p.      Zoran Obrenovic's statements about Boskic trading information with the VRS so they would not hurt him are untrue;

    q.      Obrenovic's statement that "arrangements were made with the VRS" not to harm Boskic is untrue;

    r.      Boston Globe Reporter Elizabeth Neuffer's statement concerning an interview she allegedly had with Boskic are not true. Neuffer never interviewed Boskic;

    s.      The hearsay statements from Johnetta Kelley, Liban Egal, several unidentified persons and police officers from Salem and Peabody are not accurate statements.

8. "When any factor important to the sentencing determination is reasonably in dispute" the Court should not rely on challenged hearsay statements as a basis for the sentence unless the statement has sufficient indicia of reliability. See Guideline §6A1.3(a).

9. The government's proffered evidence lacks any indicia of reliability and should be excluded. Indeed, the indicia point to its unreliability. The statements made by Erdemovic, Pelemis, and Obrenovic were not made under oath or even personally approved by the witnesses. With respect to Erdemovic, the record reveals his unreliability. The government's Sentencing Memorandum states:

> Erdemovic *stated* that he did not know where they were going or what was going to happen until they arrived at the Farm and the first bus of Muslims arrived. (Government Sentencing Memorandum, p. 11). (emphasis added).

But, in the government's Statement of Relevant Conduct to probation this very statement of Erdemovic is wholly discredited. The Government's Statement of Relevant Conduct to probation states:

> Erdemovic *claims* that he did not know where they were going or what was going to happen until they arrived at the Farm and the first bus of Muslims showed up. (This is contradicted by other witnesses who have stated that the orders were given on July 15 for the mission that took place on July 16, 1995) (Statement of Relevant Conduct, p. 7.) (emphasis added)

Apart from the obvious indications that even the government does not find Erdemovic credible, the particular discrepancy is not insignificant. It reveals Erdemovic's abiding attempt to protect Pelemis. If asked, Erdemovic would admit that he received favorable treatment while serving in the 10th Sabotage Unit because of his friendship with Pelemis. He was assigned to live at the Vlasenica headquarters. Pelemis arranged for he and his wife to be given a house which had been expropriated from a Muslim family. Erdemovic and his wife were close friends of Pelemis and his wife.

10. The Government's Sentencing Memorandum reveals that Pelemis too is not to be believed. In footnote 14, the government states:

> Pelemis told United States law enforcement that he did not give the order to the Unit to commit the massacre at Branjevo, and was not in the area at that time. . .The government does not credit this statement.

11. Obrenovic's credibility fairs no better and for the same reason as Pelemis. The government states in its Sentencing Memorandum that Obrenovic "also told the United States law enforcement that Pelemis did not give the order to the unit to go to Branjevo Farm." (Government's Sentencing Memorandum, n. 16).

12. Reporter Elizabeth Neuffer's account of her alleged meeting with Boskic is likewise

-5-

unreliable. In her book *The Key To My Neighbor's House,* which chronicles the war in the former Yugoslavia, she states in the introduction that she met with Boskic and describes him as having blond hair. (The excerpt from the book is attached at Tab A). However, Boskic has never had blond hair and denies that he ever met with Neuffer.

13. Accordingly, if the Court is inclined to rely on the government's proffered evidence the defendant requests a hearing to enable him to cross-examine the government's witnesses. The use of the witnesses' hearsay statements would violate the Confrontation Clause. See Crawford v. Washington, 541 U.S. 36 (2004). [2/]

14. A sentencing enhancement that has a drastic impact on the length of the sentence must be based on reliable evidence that is proven with particular accuracy. When, as here, the guideline enhancement functions as a "tail which wags the dog of the substantive offense," the facts upon which the enhancement is based should be proven by heightened standard of proof. See United States v. Okai, 454 F.3d 848 (8th Cir.2006), citing United States v. Townley, 929 F.2d 365, 369-370 (8th Cir. 1991) (in tail wagging the dog of substantive offense cases, clear and convincing evidence standard is appropriate). In this case, the Fifth Amendment requires proof beyond a reasonable doubt of enhancement facts.[3/]

---

[2/]"Following Crawford and Booker, courts have questioned the continuing use of testimonial hearsay at sentencing." *The Continuing Struggle for Just, Effective and Constitutional Sentencing after United States v. Booker*, Amy Baron-Evans, August 2006 (and cases cited therein at pages 71-72). The First Circuit however, has declined to enforce confrontation clause rights at sentencing hearings. United States v. Luciano, 414 F.3d. 174, 179 (1st Cir. 2005)

[3/]But see, United States v. Malouf, 2006 WL 2924940 (C.A.1 (Mass.)), ____ F.3d ___ (2006) (burden of proof at sentencing is preponderance of evidence).

Respectfully submitted,

/s/ Patricia Garin
Max D. Stern
BBO NO. 479560
Patricia Garin
BBO No. 544770
Jeffrey Wiesner
BBO No. 655814
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800

Dated: October 23, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on   6/13/06  .
/s/ Patricia Garin